# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

## JULY TERM, 1861.

---

WARREN CARPENTER AND WIFE, Plaintiffs in Error, vs. CHARLES LEONARD, Defendant in Error.

### ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

Courts of Equity have for a long time recognized an exception to the strict rule of the common law with reference to the contracts of married women, and have held that they might deal with their separate equitable estates as though sole, and might charge their separate estate in any manner not conflicting with the instrument under which the estate was acquired; but these separate estates only included such rights and interests of the wife, as would belong to the husband but for the limitation to her particular use, and the Courts of Equity did not meddle or interfere with the disposition of their equitable estates, but left those interests to be disposed of in such manner as the law had provided. Under the Statutes of this State, however, (*Stat. of Minn. p.* 571, *Sec.* 106,) married women are relieved of the disabilities of coverture, in regard to the use, enjoyment, improvement and disposal of their property, acquired as provided by the Statute, whether the estate be legal or equitable, except the restriction that she is not permitted to give, grant, or sell any such real or personal property during coverture, without the consent of her husband, except by order of the District Court of the County. As an incident of such use and improvement, the property itself becomes liable to pay her debts. The Statute does not remove the general disability to contract, imposed by coverture, nor allow a wife living with her husband, to make herself personally liable on her contracts; but her contracts respecting her separate estate bind that property, subject only to the express limitations of the Statute; and where the law would give a lien for improvements made upon the real estate of an unmarried woman, it gives it equally against the separate estate of a *feme covert.*

Under the lien law of this State, (*Comp. Stat. p.* 696, *Act of Aug.* 12, 1858,) it is not necessary that, in order that the lien should attach, the owner of the building upon which the work has been performed, should also be the owner of the land upon which the same is situated. The lien is

upon the building, and upon " the right, title and interest of the person owning such house," what ever such interest may be. And if the work has been performed upon either the building *or* appurtenances, the building *and* appurtenances are subject to the lien; that is, although the labor may have been wholly applied to the appurtenances, yet the building itself as well as the appurtenances become liable for the debt. Where labor is performed upon both building and appurtenances, it is unnecessary to specify the value of the work or materials expended upon each separately, but the same may be stated in the aggregate, and a lien be enforced for the amount.

In an action against the separate estate of a feme covert, where the husband was joined as a technical party, debts due the husband by the Plaintiff constitute no defence nor proper counter claim against the cause of action.

Points and authorities of Plaintiff in Error:

*First.*—Said action is predicated upon a mechanic's lien, and is not an equitable proceeding to charge the separate property of Mrs. Carpenter, and can only be supported under a valid agreement, upon which an action at law can be sustained.

*Second.*—The pleadings and Referee's Report show th at the alleged agreement was made with Warren Carpenter before Mrs. Carpenter had acquired any interest in the property, that Plaintiff below relied upon the promise of payment, and not upon the separate property of the wife.

*Third.*—The husband cannot bind the wife by verbal contract, as her agent, or by any promise made in her presence, as she, in the latter case, will be presumed to be acting under coercive or undue influence. 13 *Metcalf* 149, 153.

*Fourth.*—The wife's separate estate cannot be charged in equity unless sole credit is given on the faith thereof. Therefore, as the pleadings show she had not acquired the property attempted to be charged, when the alleged agreement was made, and also that the note of Warren Carpenter was taken for the amount, it is clear the separate property of the wife was not solely pledged. 4 *Comstock* 1.

*Fifth.*—An agreement or existing contract of a married woman will not form the predicate for a statutory lien. The real estate of the wife can only be encumbered by deed executed according to the provisions and under the guards provided by statute.

*Sixth.*—The separate note of Warren Carpenter for part and the joint note of Carpenter and Wife being taken for the account extinguishes the lien if any ever existed, and the sole remedy of the party is upon the notes as taken. *Booth vs*

*Smith*, 3 *Wendell* 66; *S. H. Bank vs. Fletcher*, 5 *Wendell*, 85.

*Seventh.*—The written admission of the Defendant in Error, agreeing to take the note as payment, cannot be contradicted by parol. *Folios* 143 *and* 144.

*Eighth.*—The notes taken by Defendant in Error, extended the time of payment at an increaed rate of interest over that stipulated or implied by law under the original verbal agreement, and as these notes were not due until demanded, the original demand was suspended; and as the notes are not sued upon so as to make the commencement of the action a demand, and no demand being proved no action could be sustained upon the original account; and therefore the judgment is erroneous.

*Ninth.*—The Referee erred in striking out the evidence of payment by way of rent as shown in *Folios* 85 *and* 86.

*Tenth.*—The complaint does not allege what proportion of the work and labor was done upon the property owned by said Maria, neither. is there anything in the evidence or Referee's report showing any particular amount of work or labor upon her property. Yet the Referee charges the separate property of Maria with the improvement of Stinson's property under the claim that her separate property is enhanced in value by reason of the other improvement. 4 *Selden* 383.

*Eleventh.*—The Plaintiff below must assert his lien upon the buildings erected on Stinson's property and can have no lien upon the property of Maria Carpenter for mere speculation benefits. The Court therefore erred in giving judgment upon said report.

Points and authorities of Defendant in Error :

*First.*—The action is not especially predicated on a mechanic's lien, but is equally an equitable action against the separate estate of the wife. All the allegations necessary for either are found in the complaint, and the facts found by the Referee would also support either demand. Either ground is " consistent with the case made by the complaint, and embraced within the issue." *Public Statutes*, 554, *Sec.* 169.

The New York Code has the same provision, *Sec.* 275, *and in Marquat vs. Marquat*, 2 *Kernan* 336, the Court held that in an action to compel the Defendant to execute a mortgage the Court might deny that relief and give the Plaintiff a mere money judgment.

*Second.*—The pleadings and Referee's report do not show that the agreement was made with Warren before Maria had acquired the property ; but on the contrary show that the agreement was made with Maria, with reference to property she was about to purchase, and was carried out on that property for its improvement after she had purchased. From the very start credit was given to nothing but the property.

*Third.*—There is no principle that the wife's actions in regard to her separate property if done in the presence of her husband, are presumed to be coerced by him.

A wife is sometimes excused from penal consequences when she committed the crime with and in the presence of her husband. But the principle only applies to Criminal Law. 17 *John*, 548, *Jack vs. Methodist Church.*

*Fourth.*—The taking of notes of Maria and Warren Carpenter would not extinguish the lien. *Milwain vs. Sanford,* 3 *Minn.* 147 ; besides the Referee has expressly found that the notes were not taken as payment.

*Fifth.*—The objection *now first* made that no demand for payment of the notes was made, and therefore the action is premature, is plainly frivolous. If the Defendants had any such defence they should have plead the want of any demand. It would be time enough then to call upon the Plaintiff to prove a demand, even were not the point frivolous in itself.

*Sixth.*—The Referee did not err .in striking out the evidence as to payment by way of rent. It was not plead as a payment by the Defendant Maria ; but as a counter claim existing in favor of the'Defendant Warren. The action then being solely against the estate of Maria, and the Defendant Warren being a mere technical party as *husband* of Maria, evidence of a counter claim in his favor is not admissible. It is " *res inter alios.*"

*Seventh.*—It was not necessary for the Referee to find what

amount of work was done on the main building, and what on the outbuilding.

The outbuildings were "*appurtenances.*" *Compiled Statutes, p.* 696, *Act of* 1858. *The case of McDermott vs. Palmer*, 4 *Selden*, 383, has no effect. In that case it was merely decided that a lien given for work done towards the "*erection, construction or furnishing* of buildings does not apply to the flagging of sidewalks, yards and areas of buildings in process of erection." In the New York Statute nothing was said about "*appurtenances,*" and the Court in their opinion in that very case say that had the word "*appurtenances*" been inserted in the Act giving the lien (as it was in subsequent Acts) the Plaintiff would probably have had a lien for the flagging, &c. 4 *Selden* 387.

*Eighth.*—The Plaintiff is entitled to a judgment both on equitable and legal grounds.

*A.* On equitable, because the work was done on the credit of and directly for the benefit and improvement of the separate estate and *therefore it is liable. Yale vs. Dederer,* 18 *N. Y. Reports* 265, *and* 22 *do.* 450. The consideration was obtained *for the direct benefit of the estate,* and it was always held "that married women were regarded as femes sole in respect to their separate property, and were as to such property, liable on their contracts respecting the same, to the same extent as though they were not under the disability of coverture." *Bell on Husband and Wife; Jaques vs. M. E. Church,* 17 *Johns* 548. This case definitely decided that as regarded her separate estate a married woman had full power to contract the same as if she were a feme sole ; that even when the manner in which she could contract was *expressed* in the instrument conferring her estate, as where it contained a power to alien by deed, that did not prevent her from contracting in any other manner, and that if it was desired to limit her power of contracting to a particular manner it could only be done by express negative words.

*B.* It is also equally liable on legal grounds, because the Statute enabling her to hold the real estate as a *feme sole* necessarily gave her power to contract with respect to it, and

having power to contract for the improvement of the estate, the Statute of Liens gives the lien.

The judgment should be affirmed.

SMITH & GILMAN, Counsel for Plaintiffs in Error.

ALLIS & PECKHAM, Counsel for Defendant in Error.

*By the Court.*—ATWATER J.  Charles Leonard, the Plaintiff below, brought an action in the District Court of Ramsey County, against Warren Carpenter and Maria Carpenter, his wife, to recover the sum of $884,84 for services alleged to have been performed in building and repairing buildings, on the separate estate of Maria Carpenter, and seeks to enforce the collection of his demand upon the said separate property of the Defendant Maria Carpenter.  The complaint alleges that most of the work was done on a hotel situated on land the separate estate of the Defendant Maria Carpenter, that some of it was done on a stable and outbuildings situated across the street from the said hotel, and built and used as appurtenant to it, as outhouses and stable for the said hotel, and for the purpose of adding to the value and convenience of said hotel, but not standing on land owned by Defendant Maria Carpenter.  The answer denied some of the allegations of the complaint, and set up counter claims and offsets.  The Plaintiff replied to the new matter in the answer; and the cause was referred to James Gilfillan, Esq. to hear and decide, who reported a judgment for Plaintiff, upon which Defendants below sued out a writ of error.

The facts found by the Referee are substantially as follows, viz:

That since the 20th of August, 1858, the Defendant, Maria Carpenter, had been the owner in fee in her own right, and separate and apart from her husband, of a certain parcel of land upon which stood the hotel mentioned in the complaint, and that during all that time the Defendants had been husband and wife.

That on or about the first day of August, 1858, the Defendant Maria then contemplating the purchase of said land, em-

Carpenter and Wife v. Leonard.

ployed the Plaintiff below to do certain work on said land, for its improvement, and agreed to pay him ; that in pursuance of said agreement, said Plaintiff did work on said premises.   That on the 6th of November, 1858, Plaintiff below and said Defendant Maria Carpenter had an accounting as to the amount due, and the sum of $404 was found due, for which sum both Defendants gave their promissory note payable on demand.   That afterward the Plaintiff continued to work pursuant to said agreement till about the 29th of October, 1859, when the Plaintiff below, and the Defendant Maria had another accounting, and there was found due the Plaintiff the further sum of $480,73, for which both Defendants made their certain other promissory note payable on demand.

That said notes were not taken by Plaintiff as payment, that the Plaintiff is owner of the same, and the same are unpaid.

That the work and labor done and performed as aforesaid, was done in the construction and repairing of a certain dwelling house, situated on the said real estate, in fitting the same to be used as a Hotel and Boarding House, and also in constructing a small dwelling house, stable and building designed to be used as a Bowling Alley and Lodging House on land not owned by the Defendants or either of them, situate opposite the real estate of Maria Carpenter, on the opposite side of the street, and which were constructed and designed to be used in connection with and as appurtenant to said Hotel and Boarding House, and for the better and more convenient conducting the business thereof.

That the work and labor done as aforesaid, was all done at the special interest and request of the Defendant Maria Carpenter, and for the benefit and improvement of her said separate estate, and said separate estate was thereby improved and benefitted and enhanced in value, and that a lien was duly filed upon said real estate owned by the Defendant Maria Carpenter.

The first objection urged by the Plaintiff in Error to the judgment, is that the pleadings and Referee's report show that the alleged agreement was made with Warren Carpen-

ter before Mrs. Carpenter had acquired any interest in the property, and that Plaintiff relied upon the promise of payment and not upon the separate property of the wife. The counsel has fallen into an error of fact in reference to the finding upon this point. The Referee finds that the agreement was made with Maria Carpenter, and though it appears that it was made a few days previous to the time she actually owned the land, yet it was found that it was made in contemplation of the purchase which was soon after actually made by her. There is nothing in the Referee's finding to show that the Plaintiff relied solely on her promise of payment, without reference to any claims he might have or obtain upon her property for security. Nor on the other hand do I think the allegations of the complaint, or the 'finding of the Referee, clearly establishes an equitable lien upon the property of Maria Carpenter in favor of the Plaintiff. If the Plaintiff has a lien upon the real estate of the said Defendant, it is by virtue of the provisions of the statute, independent of the equities which he shows to the Court, and it is manifest that he himself relied upon his statutory lien for the enforcement of his claim against the Defendant.

Nor under the finding of the Referee, is the point well taken by the Plaintiff in Error, that the husband cannot bind the wife by verbal contract as her agent, or by any promise made in her presence, since it is found, that Mrs. Carpenter herself made the agreement with the Plaintiff for the performance of this work. If she or her property had once incurred a liability in the premises, that could not be discharged or lessened from the fact that her husband signed the notes with her, unless such notes were received as payment. The Referee has expressly found that the notes were not received in payment.

The counsel for the Plaintiff in Error urges, " that an agreement or executory contract of a married woman cannot form the predicate for a statutory lien. The real estate of the wife can only be encumbered by deed executed according to the provisions and under the guards provided by statute." This objection renders an examination of the rights of mar-

ried women to dispose of property under our statute, necessary.

The general doctrine that the contracts of a feme covert are absolutely void, is as old as the common law, and in Courts of law as true and unshaken now as ever, save as modified by statutory enactments. By the same law the personal property of the feme sole, upon marriage, became that of the husband, though she was permitted at common law to hold a separate estate in lands vested in interest, although not in actual enjoyment while the coverture remained.

Courts of Equity, however, have for a long series of years recognized an exception to the strict rule of the common law with reference to the contracts of married women, and have held that they might deal with their separate equitable estates, as though sole. This doctrine was established in most of the States in accordance with the English decisions on the same subject, and the statutory provisions which have been enacted in many of the States, (and ours amongst the number,) for the better protection of the rights of married women, seem intended to enable Courts of law to apply the same equitable principles in like cases, and to establish beyond question, the rights of married women to deal with their separate estates, to at least as great an extent, as Courts of Equity had previously permitted, without the aid of the statute. The extent of this privilege, has been perhaps as correctly defined or stated in *Jaques vs. the Methodist Episcopal Church*, 17 *Johns* 548, as in any other case; and the doctrine there approved is, that a feme covert may dispose of or charge her separate estate in any manner, and for any purpose, not conflicting with the instrument under which she acquired it. When therefore the deed or instrument conferring the estate contained no restrictions, the power of disposition which the married woman enjoyed over her separate estate, was as unlimited as that of a feme sole.

It has been held, however, that the separate estates upon which Courts of Equity engrafted these peculiar doctrines included necessarily only such rights and interests of the wife, as would belong to the husband but for the limitation to her particular use. Such were personal estates, the rents and

profits of lands during coverture, and the inchoate title which, by the birth of a child, the husband might acquire as tenant by the curtesy. (*Yale vs. Dederer*, 18 *N. Y.* 269.) And the Court in that case further remark, that, the reversion in lands to the wife, when she owned them at the time of the marriage, was a legal estate descendible to her heirs, to which Courts of Equity did not and could not well apply the doctrines which haveb een stated. In reference to such an estate, she only had the disposing capacity which the common law, or some enabling statute allowed to her. So in regard to an estate in fee, conveyed directly to a woman after marriage, she could only dispose of the fee in the mode prescribed by law, that is by fine and recovery, or such other solemnity as the law required for the disposition of estates in land by married women. Thus it appears, that while Courts of Equity were disposed to give to married women the fullest power of disposition of their equitable estates, (when not limited by the instruments creating them,) they did not meddle or interfere with the disposition of their legal estates, but left those interests to be disposed of in such manner as the law had provided.

Such being the view taken by the Courts with reference to the power of femes covert to control and dispose of their separate estates, previous to any legislation on the subject, the Statute of 1851 was enacted, (*Comp. Stat. p.* 571, *Sec.* 106,) which provides as follows: "Any real or personal estate which may have been acquired by any female before her marriage, either by her own personal industry, or by inheritance, gift, grant, or devise, or to which she may at any time after her marriage, be entitled by inheritance, gift, grant or devise, and the rents, profits and income of any such real estate, shall be and continue, the real and personal estate of such female after marriage to the same extent as before marriage; and none of such property shall be liable for her husband's debts, engagements or liabilities; provided that nothing in this section contained, shall be construed to authorize any married woman to give, grant or sell any such rea l or personal property, during coverture, without the consent of

her husband, except by order of the District Court of the County.

We have no doubt but that the object of this statute was to relieve married women of the disabilities of coverture, in regard to the use, enjoyment and disposal of their property, acquired as provided in the Statute, and whether the estate be legal or equitable. And it has done this to the fullest extent, except in so far as the statute itself has imposed restrictions, and the only restriction imposed upon her action in this regard is, that she is not permitted to give, grant or sell any such real or personal property, during coverture, without the consent of her husband, except by order of the District Court of the County. Aside from this, the property is hers, " to the same extent," as before marriage. As a feme sole may use and improve her property, so by this statute may the married woman, and if as an incident of such use and improvement, the property itself becomes liable to pay her debts, in the same manner as it would be liable if she were sole, it furnishes no reason for the construction, that she is to be limited in the use and enjoyment in such manner that such liability shall not ensue. On the contrary it may reasonably be inferred from the terms of the statute itself, that it was the intent to make the property liable for her debts, since it expressly makes it so for all debts of the wife contracted before marriage, and provides that she may be divested of title by order of the District Court without consent of her husband. And Courts of Equity have always, or at least for a long period, held the separate estate of a feme covert, liable for improvements thereon, made for the benefit of the estate. And the only reason, I think, why the Plaintiff is not entitled to his relief on strictly equitable grounds independent of his statutory lien, is that he has not alleged and proved that he performed the services on the faith and credit of the wife's separate estate, an averment which the authorities on this head seem to hold requisite.

In the case of *Yale vs. Dederer*, above cited, Justice Comstock, who delivered the opinion of the Court, comments upon the effect of the statute of New York, upon the legal estate of married women, and arrives at the conclusion that under it

she has the power to charge her legal estate in the cases and to the extent recognized by courts of equity in respect to estates held under a trust for her separate use. It is true the statute of that State is somewhat broader than our own in regard to the extent of the power vested in the wife, she not being restricted to the consent of her husband in *conveying and devising* her real and personal property. But we do not understand the learned Justice to give *that* as the reason why she may so charge her legal estate, since he remarks, that "the right to charge her separate estate, in equity, resulted from the *jus disponendi*, which courts of equity regarded her as having, and it was a necessary incident of the full enjoyment of her property." Now, although this *jus disponendi* does not exist under our statute to the same extent as under that of New York, yet to the extent to which it does exist, the reasoning is applicable, as she has the entire control and use of her property, with the exception of not being able to convey the same without the consent of her husband, and the usual incidents of the use and control of property must follow, unless expressly negatived by statute. The right of use and enjoyment being granted to the fullest extent possible under this statute, the right of disposition, so far as necessary for complete enjoyment, must necessarily follow, since this is included in the former, and will not be limited by implication, and only by express terms. But this right to use and enjoyment would be greatly limited were courts to hold that *no* contract which the wife might make with reference to her separate estate is binding, or can bind such estate. It will not be understood, of course, from these views, that we hold that the general disability to contract, imposed by coverture, is removed by this statute, nor that a wife living with her husband can render herself personally liable on her contracts, but that her contracts respecting her separate property bind that property subject only to the express limitations of statute. That she has the right to the use and improvement of her separate estate to the same extent as if she were sole, and that where the law would give a lien for improvements made upon the real estate of an unmarried woman, it gives it equally against the separate estate of a feme covert.

It may be added, that so far as the case at bar is concerned, were the consent of the husband necessary to the improvements made on the land of Mrs. Carpenter, that consent is fully shown in the pleadings and proof, although no issue is distinctly made on this point.

It is objected by the Defendant, that the complaint does not allege what proportion of the work and labor was done upon the property owned by said Maria, neither is there anything in the evidence or referee's report showing any particular amount of work and labor upon her property, yet the referee charges the separate property of Maria with the improvement of Stinson's property, under the claim that her separate property is enhanced in value by reason of the improvement. To determine whether the whole lien may properly be placed upon the real estate owned by Mrs. Carpenter, it will be necessary carefully to note the provisions of the statute regulating mechanics' liens. *Section* 1, *of the Act of August* 12, 1858, *Comp. Stat.* 696, provides " that any person or company who shall have performed or may hereafter perform labor, or furnish materials or machinery for erecting, constructing, altering, or repairing any house, mill, manufactory, or other building or appurtenances, or for constructing, altering, or repairing any boat, vessel, or other water craft, by virtue of a contract or agreement with the owner or agent thereof, shall have a lien to secure the payment of the same upon such house, mill, manufactory, or other building and appurtenances, * * together with the right, title, or interest of the person or persons owning such house, mill, manufactory, or other building and appurtenances on and to the land upon which the same shall be situated, not exceeding," &c. It will be observed from this Act, that in order that the lien should attach, it is not necessary that the owner of the building upon which the work has been performed should also be the owner of the land upon which the same is situated. The lien is upon the building, and also upon " the right, title or interest of the person owning such house," whatever such interest may be. It will also be observed, that if the work has been performed upon either the building *or* appurtenances, that the building *and* appurtenances are subject to the lien, that is, though

the labor may have been wholly applied to the appurtenances, yet by the terms of the statute, the building itself as well as the appurtenances, becomes liable for the debt.    And this is not only in accordance with the principles of justice and equity, but necessary in order to give the full benefits intended by the Act.   For the main building must be presumed to share in the benefit of improvements on its appurtenances, and if the lien for labor performed upon them, was confined exclusively to them, it would often prove not only an inadequate but totally useless remedy, since the ownership of the appurtenances, without the building to which they were appurtenant, would in many, if not most cases be of no value.

As to what are appurtenances, must in many cases at least, be a question of fact.   Webster gives as the first meaning of appurtenance, " that which belongs to something else; an adjunct; an appendage; as small buildings are the appurtenances of a mansion."   The Referee has found as a matter of fact that these buildings 'on the opposite side of the street from the main building, " were constructed and designed to be used in connection with, and as appurtenant to said Hotel and Boarding House, and for the better and more convenient conducting of the business thereof," and that " all the work and labor was for the benefit and improvement of her said separate estate, and her said separate estate was thereby improved and benefitted and enhanced in value."   We do not see how the Defendant could have objected, or been prejudiced, had the Plaintiff claimed a lien on these appurtenances together with the property owned by her, and if such lien could properly attach as to her, the Plaintiff on the sale of the premises, might satisfy his whole claim by the purchase of one parcel of the property, that is, by the sale of that owned by Mrs. Carpenter.   I believe the fair intent to be derived from the language of the Act is, that the mechanic is entitled to his lien upon *the* building, for labor performed either upon it, or its appurtenances, and that where labor is done upon each, it is unnecessary to specify the value of the work or materials expended upon each separately, but the same may be stated in the aggregate, and a lien be enforced

for the amount.   I do not understand the case cited in the *4th of Selden* 383, to hold a different doctrine.

The objection is made by Defendant that no demand of payment of the notes was made before suit brought, and therefore the action cannot be maintained.   Whether this would have constituted a good defence, had it been properly interposed, it is unnecessary to inquire, as no such defence has been pleaded, and the action having been tried on other issues, an objection of this nature, which does not go to the merits, nor bar the action, cannot be entertained.

Upon the trial, Warren Carpenter testified, that he rented a house to Plaintiff at twenty-five dollars per month, which the Plaintiff was to pay Warren, to offset his account.   This was objected to by Plaintiff, as inadmissible as a counter claim in favor of said Defendant, and was not pleaded as a payment.   The objection was sustained, and the Defendant claims this was error.

There was no error in excluding this evidence.   No claim is made against Warren Carpenter, nor any cause of action stated against him, but only against the separate property of his wife.   As against such a cause of action, debts due the Defendant Warren from Plaintiff, constitute no defence, nor proper counter claim in the cause.   Maria Carpenter is the real party in interest in the action, and Warren is only a technical party, as the husband of Maria.   A debt due from the Plaintiff to a stranger, might with equal propriety be set up against the claim of the Plaintiff.

The judgment below is affirmed.

*Emmett, C. J., dissents.*