Tuttle v. Howe et al.

Simeon E. Tuttle

*vs.*

Kate C. Howe et al.

1.   Sufficiency of evidence to sustain a finding of fact considered.

2.   *Carpenter vs. Leonard*, 5 *Minn.*, 155, followed as to the right of a material man to enforce a lien against the separate estate of a *feme covert* .

3.   The statutory lien of a mechanic or material man may be assigned, and the assignee may, in his own name, maintain an action to enforce the same.

4.   When the tract of land upon which the building on which a lien is claimed is situated, contains more than one acre, and lies within the limits of an incorporated city, the lien claimant may carve out the acre upon which he will claim his lien, without consulting the land owner.

5.   A lien claimant having a lien anterior and superior to a homestead right, may enforce his lien without any reference to such homestead right, and in such case the homestead claimant cannot be permitted to select land which he regards as his homestead, so as to interfere with the enforcement of the lien.

The plaintiff in this case, being the assignee of a material man, brings suit in the District Court for Olmsted County, against the persons to whom the materials were furnished, and other parties in interest, to enforce the lien, &c., under the statute, and he appeals from the judgment of that Court denying the relief sought.   The case is fully stated in the opinion of the Court.

Jones & Butler for Appellant.

C. C. Willson for Respondents.

*By the Court.*—BERRY, J.—The Court below found that on the 20th October, 1866, Kate C. Howe held and owned a school land certificate, and that at that time she with her husband and co-defendant Lewis S. Howe, was in possession of the land described in such certificate, against a part of which the plaintiff seeks to enforce a lien; that E. and E. Whitcomb at said time sold and delivered to Kate C. Howe 24,270 brick, for which she agreed to pay $194.20; that said brick were used by said Kate to build a house on the land aforesaid, and that said house was built for, and occupied as a homestead of said Kate and Lewis; that on or about March 8th, 1867, said Whitcombs made an account in writing of said brick as required by law, and filed the same duly verified in the proper office, where it was recorded; that on the 20th day of June, 1867, said Whitcombs duly sold and assigned to the plaintiff said account and lien; that said Kate is indebted to the plaintiff, by reason of the premises, in the sum of one hundred and twenty-seven dollars and twenty cents, with interest, a part of the account having been paid; that on the 26th day of February, 1867, said Kate and Lewis sold and assigned to the defendant Heaney said school land certificate, together with their right, title and interest in the land aforesaid. As a conclusion of law, it is found that the plaintiff is not entitled to a lien upon the land. On what particular ground the Court based its conclusion of law, we are not informed, but the respondent claims that the conclusion is right: first, because there is no evidence to support the finding, that the brick were sold and delivered to Kate C. Howe, and that she agreed to pay for them. Now, notwithstanding there was evidence, that in making the contract with the Whitcombs, Lewis S. Howe, the husband, made no mention of his wife, and that she never expressly directed or authorized the purchase of the

Tuttle v. Howe et al.

brick, there was, on the other hand, evidence that the title to the land on which the house was built was in her name; that she knew where her husband got the brick, and the price of them, and that she furnished all the money paid on account of the brick, and the building of the house, being, at least, nearly fifteen hundred dollars, if not more than that sum. We think this evidence had a strong tendency to show that her husband acted as her agent in the purchase of the brick, and that the finding of the Court, ·that they were sold and delivered to *her* and that *she* agreed to pay for them, is not unsupported by the testimony in the case. The respondent further claims, that the land on which the building was situate was a homestead, and therefore upon the authority of *Cogel vs. McKow*, 12 *Minn.*, 475, not subject to forced sale to satisfy the lien. To this position it is a sufficient answer, that there is nothing in the evidence, or finding, to show that it was a homestead at the time when the lien attached. The fact that it became so after the lien attached, could not deprive the lien claimant of his lien. It is further urged by the respondent, that "Kate C. Howe, being a married woman, could not make a contract for brick, or create a lien upon the house under the mechanic's lien law, nor have judgment rendered against her in this case. Her separate property can only be reached by bill in equity to charge her separate estate." In support of this proposition, the counsel for the respondent cites *Pond vs. Carpenter*, 12 *Minn.*, 430, *and Carpenter vs. Leonard*, 5 *Minn.*, 155. The former case certainly does not sustain the counsel's proposition, if it has any bearing upon it at all. In the latter case substantially the same point embodied in the counsel's proposition was made, and overruled. It is there held "that where the law would give a lien for improvements made upon the real estate of an unmarried woman,

it gives it equally against the separate estate of a *feme covert.*" And in this case as in that, the consent of the husband to the making of the improvements was fully shown. And in that case, while it was held that for want of certain allegations and proof, the plaintiff was not entitled to relief out of the separate estate of the wife on strictly equitable grounds, independent of his statutory lien, it was expressly held that he was entitled to enforce his statutory mechanic's lien upon her separate property, and upon this ground the judgment was affirmed. It follows that the position of the respondent's counsel is not well taken. In this connection we refer to *Sec.* 3, *Chap.* 69, *page* 500, *Gen. Stat.*, though we do not propose to construe that statute, at this time. It is there provided, that "whenever any property is secured to the sole and separate use of a married woman, or conveyed, devised, or bequeathed to her pursuant to any of the foregoing provisions, she shall, in respect to all such property, and the rents, issues, and profits thereof, have the same rights and powers, and be entitled to the same remedies, in her own name, and be subject to the same obligations, as a *feme sole.*"

It is further contended by the respondent's counsel, that "The lien under the statute is a personal right given to the material man alone, for his protection." In other words, that the lien is not assignable. We do not agree to this. *Sec.* 14 *of the Lien Act, Ch.* 90, *Gen. St.*, provides that "Executors and administrators, under this chapter, have the same rights, and are subject to the same liabilities that their testator or intestate would be or might have if living." See also, *Sec.* 1, *Chap.* 77, *Gen. St.* It is a settled general rule, that whatever rights of action, or of property, survive to an executor, or administrator, are assignable. *The Peo-*

Tuttle v. Howe et al.

*ple vs. Tioga C. P.*, 19 *Wend.*, 73 ; *Sears vs. Conover*, 34 *Barb.*, (*S. C.*) 330 ; *Hoyt vs. Thompson*, 1 *Selden*, 347.

. Applying this rule, it would follow, that under our statute the lien of a material man or mechanic is assignable, and by *Sec.* 26, *Ch.* 66, *Gen. St.*, the assignee, as the real party in interest, would be entitled to enforce the lien in his own name. There is nothing in our statute to prevent us from applying the rule of assignability referred to, to cases of this kind. *Sec.* 8 *of the lien Act,* expressly provides that " *Every person holding* such lien, may proceed to obtain a judgment," &c. It is true that the cases cited by counsel in 10*th Wis.* and 36*th Maine*, appear to deny the assignability of liens, but the denial does not appear to rest on satisfactory reasons, and our statutory provisions in regard to liens differ somewhat from those of Maine and Wisconsin. *Dawbigny vs. Duval*, 5 *T. R.*, 603, cited by respondent's counsel, is authority only for the proposition, that a factor has no right to pledge the goods of his principal. And as to this case, see *Story on Bailments*, *Sec's* 325, 326, 327. On the other hand, liens of this kind appear to be held assignable in *Goff vs. Papin*, 34 *Missouri*, 178.

We can conceive of no reason, in the nature of things, why an assignment of the debt, or account, and the lien, such as was made in this case, should not be valid, so that the assignee can enforce the lien in his own name.

The claim of the material man, and the lien, are certainly the property of the material man, and why should he not have the right to dispose of both ? There is nothing in the lien right of the nature of a personal trust. The lien holder is not entrusted with the possession of the property bound by the lien. His lien is a security. What difference can it make to the lienor who holds the lien ? His duty is to pay the debt. If he pays it, his property is discharged. If

he fails to pay it, and so loses the property, of what moment is it to him whether the lien is enforced by the material man or his assignee?

So far as considerations of this kind are concerned, we are unable to see why the quality of assignability should not be attributed to a mechanic's lien, as well as to a judgment lien, a lien by mortgage, or the special property of a pawnee. The lien law is designed for the *protection* of the material man, the mechanic and other persons performing labor upon buildings. As an assignment is not prohibited, and there is nothing in the nature of a lien which would render its transfer improper or injurious, and as the lien is wholly a creature of statute, the statute should be so construed (if it fairly may be) as to make the protection which it designs to afford as valuable and effectual as possible. And upon these grounds, we think the assignability of mechanics' liens ought to be sustained if fair construction will permit it, for it is apparent that the right to dispose of his lien, to realize from it, without waiting for the slower process of the law, may be of great advantage to the lien holder, and cannot possibly injure the lienor.

The last point made by the respondent in support of the conclusion of the Court is based on this state of facts. It appears that the school land certificate held and owned by Kate C. Howe, covered the whole of a lot, known as lot 4, containing two and a half acres; that the house was situate on the north-west part of it, about one hundred feet from the north-west corner of said lot. It also appears that the Whitcombs claimed their lien upon a part of said lot, commencing at the north-west corner thereof, such part being twenty rods in length, from east to west, and eight rods in width, from north to south, and including the house. That is to say, the Whitcombs claimed a lien upon one acre of

land out of the tract; one acre being all upon which they could claim a lien, inasmuch as the tract was within the limits of the city of Rochester.

The respondent insists that the conclusion of the Court was right, because it was not in the power of the lien claimants to carve out one acre from the larger tract in a form to suit themselves, and that the owners, as homestead claimants, should be consulted. Admitting that Heany, the only defendant appearing, and who claims no homestead right for himself, can be heard to make an objection of this kind, we are of opinion that the objection is untenable. The lien law gives no direction as to how the acre shall be carved out of the larger tract. The lien given is upon the building, and upon the right, title and interest of the owner of the building, in and to *the land upon which the same is situated*, not exceeding in extent one acre. As the statute gives the lien upon one acre only, it is necessary that the acre (if part of a larger tract) should be described in the lien claim required to be filed, in order that all persons may have notice of what land is affected by it. And as there is no provision of law by which the lien claimant is authorized to call upon, or compel the owner of the land to designate the acre, we see no reason why he should not be permitted to designate it himself. If his designation might sometimes unnecessarily prejudice the rights of the land owner, it is equally true that a designation by the land owner might seriously affect the value of the lien. As far as the homestead right is concerned, it is to be borne in mind, that it does not appear in this case that the premises were a homestead at the time when the lien right accrued. The lien right is certainly paramount to any homestead right acquired subsequent to its inception. But if it be necessary (as we construe it to be) for the lien claimant to desig-

nate in his lien claim the particular acre of land upon which he claims a lien, and by the selection of such acre as a homestead the land owner may prevent it from being sold in the enforcement of the lien, the effect would be to make the lien subordinate to a homestead right acquired after the lien had accrued.

We are therefore of opinion, that as the statutes now ·stand, the lien claimant having a lien anterior and superior to a homestead, may enforce the same without any reference whatever to such homestead right, and that the homestead claimant cannot be permitted to exercise a right of selection of the land which he regards as his homestead, so as to interfere with the enforcement of the lien.

These are all the points which we are called upon to consider in this case, and from the views expressed, it follows that the Court below erred in its conclusion of law.

The judgment must therefore be reversed, and the case remanded for further proceedings, in accordance with this opinion.