# Phillips *v.* Thorp.

DIVORCE—AGREEMENT NOT TO DEFEND SUIT IS VOID.—The authorities are uniform in holding that any agreement between the parties having for its object the dissolution of the marriage contract, or facilitating that result, such as an agreement by the defendant in a pending action for divorce, to withdraw his, or her opposition, and make no defense, is void, as *contra bonos mores*.

IDEM.—Such agreements are a fraud upon the law which favors marriage, and will not give its sanction nor lend its aid to uphold or enforce the terms of any contract, nor countenance any contrivance which is designed to promote its dissolution.

IDEM.—Nor will equity interpose its jurisdiction to correct mistakes arising out of such illegal contracts, as suppression of them is far more likely to be accomplished by leaving the parties without remedy against each other.

IDEM.—Where the defense of illegality is interposed, it is allowed upon grounds of public policy and not out of any regard for the interests of the objecting party.

APPEAL from Polk County.

*Warren Truitt,* for appellant.

*Tilmon Ford,* for respondent.

By the Court, LORD, J.:

This was a suit to correct a mistake in a deed executed in pursuance of a stipulation or agreement, entered into between the plaintiff and defendant, *pendente lite,* for a divorce, in which it was agreed, in consideration of the same and to settle all questions of property and alimony, the plaintiff was to release all claim to the real and personal property of the defendant, and to prosecute to final determination the said divorce suit, paying all costs and expenses therefor, and the defendant was to make no defense therein. After the divorce was granted, a mistake, it is alleged, was discovered in the deed of the defendant to the plaintiff, by which the plaintiff is deprived of several acres of land which it is claimed that the deed was intended to include, and to correct which is the object of this suit. The question to be determined is, whether equity will interpose to afford the relief prayed for under such a state of facts. The welfare of society is so deeply interested in the preservation of the marriage relation, and so fraught with evil is regarded whatever is calculated to impair its usefulness, or designed to terminate it, that it has long been the settled policy of the law to guard and maintain it with a watchful vigilance. Although marriage, in the eye of the law, is a civil contract,

unlike any other civil contract, it cannot be rescinded or annulled by consent of the parties to it. By mutual consent, if the parties are of the proper age and capacity, the marriage relation may be created and receive the sanction of the law, but it cannot dissolve or terminate it. That high office can only be performed by a court of competent jurisdiction, for some specified cause prescribed by law, upon proof taken in a suit for that purpose. The good order and well being of society, as well as the laws of this state, require this. And so strict and careful are courts in the admistration of this justice, out of regard for the public morals and the general welfare of society, that they will esteem it their duty to interfere upon their own motion whenever it appears the dissolution is sought to be effected by the connivance or collusion of the parties; and all contrivances or agreements, having for their object the termination of the marriage contract, or designed to facilitate or procure it, will be declared illegal and void as against public policy. In *Weeks* v. *Hill*, 38 N. H., 204, the court say: "Upon principles of public policy, contracts which provide for bringing about a marriage between two parties for a reward, called marriage brokage contracts, are held void, as tending to improvident and ill advised matches. (*Drury* v. *Hook*, 1 Verm., 412; *Smith* v. *Aykerill*, 3 Alk., 566; 1 Story Eq. Jur., sec. 260.) And when the marriage relation has been assumed, it is equally the policy of the law to sustain and uphold it. It, therefore, holds all contracts void which contemplate or provide for the future separation of the parties, or which are calculated to prevent future reconciliation; (Chit. on Cont., 673;) or which aim at effecting a dissolution of the marriage contract, except by a proper administration of the law in the due course of judicial proceedings." In *Adams* v. *Adams*, 25 Minn., 79, the court say: "The

authorities are uniform in holding that any contract between the parties having for its object the dissolution of the marriage contract, or facilitating that result, such as an agreement by the defendant in a pending action for divorce, to withdraw his or her opposition, and to make no defense, is void, as *contra bonos mores*, and that any note executed in consideration and pursuance of such agreement, is without valid consideration and void." (*Hamilton* v. *Hamilton*, 89 Ill., 349; *Comstock* v. *Adams*, 23 Kansas, 513; *Stoutenbury* v. *Lybrand*, 13 Ohio St., 228; *Belden* v. *Munger*, 5 Minn., 169; *Visci* v. *Bertrand*, 14 Ark., 266; *Muckenburg* v. *Holler*, 29 Ind., 140; *Sayles* v. *Sayles*, 1 Foster, 312.)

An unlawful agreement, it is said, can convey no rights in any court to either party, and will not be enforced in law or in equity, in favor of one against the other of two persons equally culpable. *Armstrong* v. *Armstrong*, 3 My. & K., 64. "All agreements," says Mr. Pomeroy, "directly or indirectly preventing or controlling the due administration of justice, are opposed to the universal and most elementary principles of public policy. Whatever be their form and immediate purpose, and however innocent may be the methods of the parties, they are plainly invalid." (Pomeroy Eq. Jr., vol. 2, 935 and notes.)

Throwing out of consideration that at the time the agreement was made in which the plaintiff releases all claim to the real and personal property, and the defendant executed to her the deed in question, that the parties were still husband and wife, the consideration for which these things were done, contemplated and included as an essential part of it, the prosecution to a final determination by the plaintiff of the divorce suit then pending, and to better facilitate and secure that result, the defendant was to withdraw all opposition—"make no defence." It was in effect but the

husband and wife coming together after the suit for divorce was instituted, and agreeing upon the terms upon which the property should be divided, and they be divorced. It is, in fact the refusal of the defendant to do what he agreed to do under the illegal contract, and what it is claimed was intended and supposed to have been done under such contract, that the plaintiff asks relief. But this only shows that the plaintiff still relies upon the illegal contract and its terms for relief. That contract was clearly against the policy of the law as one being entered into for aiding and procuring by collusion the dissolution of the marriage relation. It was a fraud upon the law which favors and sustains the marriage relation, and it will not give its sanction nor lend its aid to enforce or uphold the terms of any contract, nor countenance any contrivance which is designed to promote its dissolution. Nor will equity lend its power to correct mistakes arising out of such illegal agreements, as the suppression of such illegal contract is far more likely to be accomplished by leaving the parties without remedy against each other.

Where the defence, as in this case, is illegality, it is allowed upon grounds of public policy, and not out of any regard for the rights or interests of the objecting party. Although it may be unjust as between the parties, when one is in the enjoyment of the fruits of the agreement, to set up the illegality, the law sustains it out of consideration for the interests and welfare of society. It may be, as argued, that the objection comes with a bad grace from him who has reaped the benefit of the agreement, but on this subject in *Holman* v. *Johnson*, Cowp., 343, Lord Mansfield said: "The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the latter. It is not for his sake, however,

the objection is allowed, but it is founded in general principles of policy which the defendant has the advantage of, contrary to the real justice between defendant and plaintiff —by accident, if I may say so. The principle of public policy is, *ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own stating, or otherwise, the cause of action appear to arise *ex turpi causa*, or is a transgression of the positive law of this country, then the court says he has no right to be assisted. It is upon that ground that courts go, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. It may be, too, as argued, that this is not a commendable defence under the particular circumstances of this case, but as the same distinguished judge said, that is a matter for the consideration of the defendant and not for us. Decree reversed, and bill dismissed.

Decree reversed.