### OSCAR V. WOOD v. C. R. ROSENDALE.

1. PAYEE ACCEPTING NOTE PAYABLE IN FOUR YEARS CONTEMPLATES PROBABILITY OF CHANGE OF RESIDENCE.

    The payee, who afterwards became indorser, having accepted a note payable in four years and containing a general place of payment, must be held to have contemplated the probability that the maker might change his residence, and to have assumed to be governed by the exercise of such diligence in the presentment as change of residence and circumstances might require.

Wood v. Rosendale.

2. PRESENTMENT WHICH WILL BIND INDORSER.

Presentment, if made on the proper day, of a note maturing in four years, payable at "Fostoria, O.," where maker and payee then resided, by a notary who had possession of the instrument, at the late residence of the maker in Fostoria, for the purpose of demanding payment, and finding that she had removed from the city some time previous, and the only information, and that not of a certain or positive character, that notary could gain was that she resided in Springfield, O., whereupon notice of dishonor was mailed to indorser, was an exercise of diligence which will bind such indorser.

3. NOTE EXECUTED NOVEMBER 7, 1892, PAYABLE IN FOUR YEARS, MATURES NOVEMBER 10, 1896.

A note executed November 7, 1892, payable four years from date, under the law in force at that time relating to commercial paper, secs. 3171 to 3175, Rev. Stat., is entitled to days of grace and became due November 10, 1896.

4. DAYS OF GRACE BECAME PART OF THE CONTRACT, AND COULD NOT BE WITHDRAWN BY SUBSEQUENT CHANGE OF THE LAW.

The days of grace inserted by an existing law became an important element of the contract, and the general assembly could not withdraw them from it by a subsequent change (reference is made to the amendment of sec. 3175, Rev. Stat., passed March 12, 1896, abolishing days of grace) of the statute. They were a contract right, and did not pertain merely to the remedy to enforce it.

5. PREMATURE PRESENTMENT.

Under this rule a presentment of the note referred to and notice of dishonor or protest made on November 6, 1896, was premature, and did not bind the indorser.

ERROR to the Court of Common Pleas of Hancock county.

The suit in the lower court was upon a promissory note for $450, executed and delivered by Ollie E. Yager to Oscar V. Wood, on November 7, 1892, which by its terms was negotiable and to become due and payable with interest four years from its date. The note was made payable at "Fostoria, Ohio," where the maker and payee then resided. Before maturity and for valuable consideration, the payee sold and transferred it by blank indorsement to C. R. Rosendale, defendant in error.

On November 7, 1896, a notary public who had possession of the instrument, took it to the late residence of the maker in Fostoria, for the purpose of demanding payment, but she had removed from the city at some time previous, and the only information he could gain, was that she then resided in Springfield, Ohio, but the information was not of a certain or positive character. Thereupon the notary protested the note for non-payment, and on the same day enclosed in an envelope, properly stamped, a notice to Wood, the indorsed, that the note had that day been presented for payment which was refused, and that the holder, Rosendale, would look to him for payment. The stamped envelope containing this notice was addressed to Wood at his residence, in Fostoria, where there was a system of postal collection and mail delivery by carriers at that time. No other demand was made or notice given. The indorser refused to pay, and suit was brought and recovery had in the lower court.

It is contended for the indorser, that no proper presentment was made, and that the attempt to make demand and the giving of the notice of non-payment were premature, as the note was entitled to days of grace.

The defendant in error contends that the statute in force when the note was executed, as to days of grace, was remedial in its nature; that they were not part of the contract as to time of payment, and that the amendment of sec. 3175, Rev. Stat., passed March 12, 1896, abolishing days of grace, applies to this note, although it was not then due.

PRICE, J.

Two questions arise on the facts stated:

First—Was such presentment of the note made as would bind the indorser?

Second—Were the presentment and notice of dishonor on the proper day?

We answer the first question in the affirmative.

The parties to the instrument resided in Fostoria at the date of its execution and delivery, and were content to have the place of payment "at Fostoria" without designating any particular place in that city. If the maker resided in the city when the note matured, presentment should have been made at such residence, or to the maker personally. Either would have been due presentment. But where no definite place in the city has been fixed, and the maker has no residence or place of business therein, Chancellor Kent has said that the instrument may be protested in the city on the proper day without further inquiry.

See Kent's Commentaries, volume 3 (5th edition), pages 95-97, where the author states: "If there be no particular and certain place identified and appointed, other than a city at large, and the party has no residence there, the bill may be protested in the city on the day without inquiry, for that would be an idle attempt. The general principle is, that due diligence must be used to find out the party and make demand; and the inquiry will always be, whether, under the circumstances of the case, due diligence has been used."

In the case at bar, the payee, who afterwards became the indorser, accepted the note containing a general place of payment, and should be held to have contemplated the probability that, during the four years, the maker might reside elsewhere; and when he endorsed it to Rosendale, he assumed to be governed by the exercise of such diligence in its presentment as change of residence and circumstances might require.

This view seems to find support in Sec. 234 of Story on Promissory Notes: "From what has been already said, it may be inferred, and indeed it is a clearly established doctrine, that where a promissory note is made payable at a particular place, as for example, at a bank or bankers, in every case it will be sufficient for the holder to present the same for payment at the specified place, and he is under no obligation whatsoever, in case of dishonor at that place, to present it for payment elsewhere, or personally to the maker. The reason is, that by making it payable at that particular place, the maker impliedly dispenses with the necessity of making any demand upon him, either personally or elsewhere. And this doctrine applies as well to the case of indorsers as to the maker of such promissory note; for the indorsers equally with the maker in such case, impliedly agree that presentment at the place shall be sufficient to bind all the parties."

And we further observe of one of the facts of this case, that when the notary visited the late residence of the maker, it was for the first time ascertained that she had removed from the city, and as the information as to her new place of abode was uncertain, an effort to find her might have been a vain thing.

Besides all this, the information came too late to make demand at her then residence on that day.

Hence, we hold that if the attempt to make demand was on the proper day, due diligence was used for that purpose.

Second—Were presentment made and notice of dishonor given on the proper day?

We answer this question in the negative.

If the instrument in controversy was entitled to days of grace, it is quite clear that the presentment and notice were premature. It was executed November 7, 1892, and payable four years from date, and, including three days of grace, became due and payable November 10, 1896. The notice of dishonor was given November 7, 1896, and at no other time.

It is beyond reasonable controversy, and we need not cite authorities to show it, that as the law stood when this note was executed and indorsed, it was entitled to three days of grace. The legislature of Ohio, at an early day, adopted many features of the law-merchant as to commercial paper, and which find expression in secs. 3171 to 3175, Rev. Stat., and prior to the amendment of Sec. 3175, Rev. Stat., passed March 12, 1896: "All bonds, notes, bills and checks payable at a day certain after date, or after sight, shall be entitled to three days of grace in time of payment.   *   *   *"

This was the law in force when the note in suit was executed, and if the days of grace became part of the contract, the general assembly could not withdraw them from it by a subsequent change of the statute.

We hold that days of grace became an important element of the note, inserted by existing law as part of the agreement of the parties, and consequently it did not become payable until the third day of grace, on November 10, 1896.

In Story on Promissory Notes, sec. 215, the author says: "*   *   * These days of grace, which take their name from being days of indulgence or respite, granted the maker for the payment of the note, seem to have had their origin at a very early period in the history of negotiable paper. They were, probably, originally introduced by the usage of merchants, in the first place to enable the acceptor of a bill to more easily make payment of his acceptances as they became due, *   *   * and in the next place, to point out to the holder, what time he might reasonably grant to the acceptor for such payment without being guilty of laches, or endangering his right of recourse against the other parties thereto. In both views the usage was at first probably discretionary and voluntary on the part of the holder, and gradually, from its general convenience and utility, it ripened into a positive right, as it certainly now is, and was also applied to promissory notes."

In his work on Negotiable Instruments, sec. 614, Daniels states the history and effect of days of grace as follows: "They were originally days allowed by way of favor to the drawer of a foreign bill, to enable him to provide funds for its payment without inconvenience, and were called 'days of grace,' because they were gratuitous, and dependent upon the holder's pleasure. *   *   * By custom, however, they became universally recognized, and although still termed 'days of grace,' they are now considered, wherever the law-merchant prevails, as entering into the constitution of every bill of exchange and negotiable instrument, both in England and the United States, and form so completely a part of it, that the instrument is not due, in fact or in law, until the third day of grace."

In Ogden v. Sanders, 12 Wheaton, 213-342, Chief Justice Marshall used this language in part: "The usage of banks by which days of grace are allowed on notes payable and negotiable in bank, is of the

Hancock Circuit Court.

same character.  *  *  *  Usage has extended the time of grace, generally to three days.  This usage is made a part of the contract, not by the interference of the legislature, but by the act of the parties.  *  *  *  In all such cases, the bank receives and the maker of the note pays interest for the days of grace.  This would be illegal and usurious if the money was not lent for those additional days.  *  *  *  Since by the contract, the maker is not liable for his note until the days of grace are expired, he has not broken his contract until they expire.  The duty of giving notice to the indorser of his failure does not arise until the failure has taken place."

It seems to us unprofitable to quote further authorities on so plain a proposition; but we have two Ohio cases which contain the same doctrine, but in a different form.

In McMurchy v. Robbinson, 10 O., 496, our Supreme Court decided that a demand on the second day of grace is not good.

In Lewis v. Moon, 1 Circ. Dec., 116, the circuit court of Fayette county held that a judgment rendered on the third day of grace was without jurisdiction.  In that case, judgment was confessed by warrant of attorney on the third day of grace, and it was decided that the judgment was not only erroneous, but without authority and invalid.  The holding of the circuit court was afterwards affirmed by the Supreme Court, without report, April 29, 1890.  The reason why the demand on the second day of grace was not good in McMurchy v. Robinson, *supra,* evidently was, that the note was not then due.  And in Lewis v. Moon, *supra,* the judgment was invalid because taken before the note was due.  The maker had the whole of the third day of grace to make payment, and an action brought on such note on the third day of grace could not be maintained.  Therefore, the note here involved was entitled to days of grace, although it did not mature for several months after the passage of the amendment of sec. 3175, Rev. Stat., March 12, 1896; 92 O. L., 61.

By that amendment, days of grace were abolished, but not as to pre-existing contracts.  Its provisions could only apply to and govern subsequently executed instruments.  It was not competent for the legislature to impair the obligation of existing contracts, and an attempt to do so would be unconstitutional.

The foregoing principles establish that the grace allowed by the law when the note in suit was executed was a contract right and did not pertain merely to the remedy to enforce it, and such right could not be taken away by a subsequent amendment of the statute.

The presentment and notice on November 7 were premature, and did not bind the endorsers.

The lower court erred in rendering judgment for the holder of the note, Rosendale, for which error its judgment is reversed.

And this court, making the proper finding on the undisputed facts, finds for the plaintiff in error, and enters judgment accordingly.

*John Poe,* for plaintiff in error.

*Ross & Kinder,* for defendant in error.