476    SUPREME COURT OF INDIANA.

Sinton *et al. v.* The Steamboat R. R. Roberts, *alias* New Era.

SINTON, ET AL. *v.* THE STEAMBOAT R. R. ROBERTS, ALIAS
NEW ERA.

PRACTICE.—*Demurrer.—Plea in Abatement.*—If an objection to a complaint on
account of an error in the name of the defendant can be raised by demurrer,
it can only be done by assigning as a cause of demurrer a defect of parties
defendants. But the proper remedy is by a plea in abatement.

CLERICAL MISTAKE.—A mere clerical mistake, being amendable in the court
below, will, in the Supreme Court, be regarded as amended.

JURISDICTION.—*Courts of the United States.—Admiralty.*—The admiralty juris-
diction of the courts of the United States does not extend to cases where a
lien is claimed by the builders of a vessel, for work done and materials fur-
nished in its construction.

SAME.—*State Courts.*—The courts of this State possess full and ample jurisdic-
tion of a cause of action resting upon a debt arising out of the building of a
steamboat in Indiana, under a contract made in Indiana.

ATTACHMENT.—*Lien upon Steamboat.—Surrender of Note.*—In a proceeding
by attachment, to enforce a lien against a steamboat, under the statute of this
State, for the price of an engine and boiler used in its construction, it is not
necessary that the complaint should contain an offer to surrender a note given
for the same.

SAME.—The taking of such note does not destroy the lien.

SAME.—Nor does the assignment of such note destroy the lien. The assignment
carries with it the lien.

SAME.—*Delay in Enforcing Lien.*—Where a debt has been incurred in building
a steamboat, and the boat has left the State and been absent about nine years,
the lien in such case is not lost by delay. A lien in such case is not lost unless
there has been unreasonable neglect and delay, operating to the prejudice of
third parties, after opportunities have existed to enforce the lien.

SAME.—*Pleading.*—If a complaint to enforce such lien does not show that there
has been unreasonable delay, if such fact exist, it must be shown by answer.

SAME.—*Notice of Lien.—Registry Laws.*—Such lien may be enforced though
no notice of the lien has been given as required by the registry laws of the
United States.

SAME.—*Lien Created by Master.*—The statute of this State provides a lien for
liabilities created by the master of a steamboat.

From the Floyd Circuit Court.

*M. C. Kerr* and *W. C. Hisey,* for appellants.

BUSKIRK, J.—This case has been in this court before. It
is reported in 34 Ind. 448. It is a proceeding by attach-
ment to enforce a lien under the statute of the State against
a steamboat, for the price of the engine and boilers. Those

who desire a more specific statement of the facts are referred to the former opinion of this court.

When this case was formerly here, the judgment was reversed, because the court below had improperly sustained a motion to quash the attachment. When the cause was remanded, a demurrer was sustained to the complaint, but upon what grounds, or for what reasons, we are not advised, except that the ground of the demurrer was a deficiency of facts to constitute a cause of action. The record in a cause informs us what the ruling of the court below was upon any given point, but it seldom informs us what were the grounds of the ruling, or what reason controlled the action of the court below. For this information, we usually look to the brief of counsel who procured the ruling to be made. When this cause was here before, we were not aided by a brief for appellee, but we had to look to the brief of counsel for appellant to ascertain the supposed ground upon which the ruling was based. We are again in the same condition. There is no brief for the appellee. We are informed by the brief of counsel for appellants, that eleven objections were urged in the court below to the complaint, but we do not know which one or how many of the objections were sustained by the court. A brief from counsel for appellee would, at least, inform us what objections were relied upon, and what were waived, and thus our labors would be lightened, and we would be aided by the argument of counsel in arriving at a just and correct conclusion. But as it is, we will have to consider the questions discussed by counsel for appellants, unaided by an argument in support of the ruling of the court below or citation of authorities. We do not intend by what we have said to censure the learned counsel who appeared for the appellee in the court below, as there may be a sufficient reason why he has not briefed the case; but the failure of counsel to brief their causes has become so frequent as to make it our duty to call the attention of the profession of the State to the subject, in the earnest hope that it may lessen a great and growing evil. The failure of counsel for an

appellee to brief a case frequently results in injury to his client and injustice to the court below, and always increases our labors, and sometimes causes an incorrect decision here. An attorney who, by argument and production of authorities, induces a court to render a ruling in his favor, owes it to that court, to his client, and his own reputation, that when the cause is appealed here, he should aid us by argument and citation of authorities. If this is true of counsel for appellees, what excuse can be offered for an attorney who appeals a cause to this court, and obtains a *supersedeas*, and then fails to properly brief the cause ! We felt it to be our duty in *Kesler* v. *Myers*, 41 Ind. 543, to point out some of the evils which resulted from a failure on the part of counsel to properly brief and look after their causes in this court. These suggestions are not made in a captious or censorious spirit, but from a sincere desire to induce our brethren to aid us in the discharge of our difficult and arduous duties.

We proceed to the examination of the questions discussed by counsel for appellants.

It is objected that the complaint is defective, because there is an error in the name of the defendant, the boat being called in the body of the complaint the "R. R. Roberts, *alias* the New Era," and in the note the "T. W. Roberts." This objection was considered in the former decision of this case, and was held to be untenable. If the objection could be raised by demurrer, it could only be by assigning for cause of demurrer a defect of parties defendants. This was not done. The proper remedy would have been a plea in abatement. *Mann* v. *Carley,* and *Chapin* v. *Carley,* 4 Cowen, 148 ; *Miller* v. *Stettiner,* 7 Bosworth, 692 ; *Miller* v. *Stettiner,* 22 How. Pr. 518.

Viewing the entire complaint and exhibits together, it is very manifest that it is a mere clerical mistake, and, being amendable in the court below, will be regarded as amended. *Bauman* v. *Grubbs,* 26 Ind. 419.

The jurisdiction of the court is again called in question. It was expressly held, when this case was here before, that

the court below possessed jurisdiction of the subject-matter of the action. We suppose that counsel for appellee rely upon the late decisions in admiralty cases, reported in 4 Wallace, pp. 411, 555. But those and like authorities only decide that the jurisdiction of the United States courts over causes cognizable in admiralty is exclusive. They have no relation whatever to the vast amount of business and litigation not cognizable in admiralty. The cause of action in the present case belongs to the latter class. The action rests upon a debt arising out of the building of a steamboat, in Indiana, under a contract made in Indiana, and now sought to be enforced in the tribunals of the State.

It is well settled, that the admiralty jurisdiction of the courts of the United States does not extend to cases where a lien is claimed by the builders of a vessel, for work done and materials furnished in its construction. *The People's Ferry Co., etc.,* v. *Beers,* 20 How. U. S. 393; *Roach* v. *Chapman,* 22 How. U. S. 129; *Steamboat Orleans* v. *Phœbus,* 11 Pet. 175; *The Belfast,* 7 Wal. 624; *Amy* v. *The Supervisors,* 11 Wal. 136; *Leon* v. *Galceran,* 11 Wal. 185; *Wyatt* v. *Stuckley,* 29 Ind. 279; *Sinton* v. *The Steamboat R. R. Roberts,* 34 Ind. 448; 2 Parsons Shipping & Admiralty, 328.

In *The Belfast, supra,* the court say: "Authority does not exist in the state courts to hear and determine a suit *in rem* in admiralty to enforce a maritime lien. Such a lien does not arise in a contract for materials and supplies furnished to a vessel in her home port, and in respect to such contracts it is competent for the states, under the decisions of this court, to create such liens as their legislatures may deem just and expedient, not amounting to a regulation of commerce, and to enact reasonable rules and regulations prescribing the mode for their enforcement."

But it may be claimed that the statute of this State which gives a lien on boats and other water craft may be a regulation of commerce, and therefore void under the ruling in the above case. Upon this point, the following language is

used in such case: " Difficulties attend every attempt to define the exact limits of admiralty jurisdiction, but it cannot be made to depend upon the power of Congress to regulate commerce, as conferred in the Constitution. They are entirely distinct things, having no necessary connection with one another, and are conferred, in the Constitution, by separate and distinct grants.

" Congress may regulate commerce with foreign nations and among the several States, but the judicial power, which, among other things, extends to all cases of admiralty and maritime jurisdiction, was conferred upon the Federal Government by the Constitution, and Congress cannot enlarge it, not even to suit the wants of commerce, nor for the more convenient execution of its commercial regulations."

There seems to be a misconception as to the scope and effect of the decisions of the Supreme Court of the United States, reported in 4 Wallace, and known as the Admiralty Cases.

*The Moses Taylor,* 4 Wallace, 411, was an action brought under a statute of California, in a court of that State, against the steamship Moses Taylor, for a breach of a contract made by Roberts, the owner of the vessel, with one Hammons, to transport him from New York to San Francisco. The defendant appeared to the action, and pleaded to the jurisdiction of the court. The plea was overruled, and the state courts assumed and exercised jurisdiction, and rendered judgment against the defendant, from which he appealed to the Supreme Court of the United States, where it was held the contract was a maritime contract, and alone cognizable in the admiralty courts. The court say: "The case presented is clearly one within the admiralty and maritime jurisdiction of the Federal courts. The contract for the transportation of the plaintiff was a maritime contract. As stated in the complaint, it related exclusively to a service to be performed on the high seas, and pertained solely to the business of commerce and navigation. There is no distinction in principle between a contract of this character and a.

contract for the transportation of merchandise. The same liability attaches upon their execution, both to the owner and the ship. The passage-money in the one case is equivalent to the freight-money in the other. A breach of either contract is the appropriate subject of admiralty jurisdiction."

The court further held, that under the Federal Constitution and the legislation of Congress, the jurisdiction of the Federal courts in such cases was exclusive.

The case of *The Hine* v. *Trevor*, 4 Wallace, 555, was a case of collision between two steamboats on the Mississippi river, at or near St. Louis. Some months afterward, the owners of the Sunshine caused the Hine to be seized while she was lying at Davenport, Iowa, in a proceeding under the laws of that State, to subject her to sale in satisfaction of the damages sustained by their vessel. The code of Iowa, under which this seizure was made, gives a lien against any boat found in the waters of that State, for injury to person or property by said boat, officers, or crew, etc.; gives precedence in liens; authorizes the seizure and sale of the boat, without any process against the wrongdoer, whether owner or master, and saves the plaintiff all his common law rights, but makes no provision to protect the owner of the vessel.

The owners of the Hine interposed a plea to the jurisdiction of the state court. The point being ruled against them, it was carried to the Supreme Court of that state, where the judgment of the lower court was affirmed, from which judgment an appeal was taken to the Supreme Court of the United States. It is apparent that the sole question presented for decision was, whether the state courts of the State of Iowa possessed jurisdiction to hear and determine the liability of the defendants for the injuries resulting from a collision between two steamboats on the Mississippi river.

It was held by the Supreme Court of the United States, in *The Thomas Jefferson*, 10 Wheat. 428, that the jurisdiction of the courts of admiralty in the United States was lim-

ited to the ebb and flow of the tide; and this continued to be the recognized doctrine until 1851. The ruling was made under the judiciary act of the 24th of September, 1789, and followed the rule as it existed in England.

It was on the 26th of February, 1845, enacted by Congress, "that the District Courts of the United States shall have, possess, and exercise the same jurisdiction in matters of contract and tort, arising in, upon, or concerning steamboats and other vessels of twenty tons burden and upwards, enrolled and licensed for the coasting trade, and at the same time employed in business of commerce and navigation, between ports and places in different states and territories, upon the lakes and navigable waters connecting said lakes, as is now possessed and exercised by the said courts in cases of the like steamboats and other vessels, employed in navigation and commerce upon the high seas, or tide-waters within the admiralty and maritime jurisdiction of the United States."

In the case of *The Propeller Genesee Chief* v. *Fitzhugh*, 12 How. U. S. 443, the constitutionality of the above act was called in question. It was contended, that as the admiralty and maritime jurisdiction, as known and understood in England and in this country at the time the constitution was adopted, was confined to the ebb and flow of the tide, and that as there was no tide in the lakes, or the waters connecting them, Congress possessed no power to enact the above quoted act. The court say: "Now there is certainly nothing in the ebb and flow of the tide that makes the waters peculiarly suitable for admiralty jurisdiction, nor anything in the absence of a tide that renders it unfit. If it is a public navigable water, on which commerce is carried on between different states or nations, the reason for the jurisdiction is precisely the same. And if a distinction is made on that account, it is merely arbitrary, without any foundation in reason; and, indeed, would seem to be inconsistent with it. In England, undoubtedly, the writers upon the subject, and the decisions in its courts of admiralty, always speak of

the jurisdiction as confined to tide-water. And this definition in England was a sound and reasonable one, because there was no navigable stream in the country beyond the ebb and flow of the tide ; nor any place where a port could be established to carry on trade with a foreign nation, and where vessels could enter and depart with cargoes. In England, therefore, tide-water and navigable water are synonymous terms, and tide-water, with a few small and unimportant exceptions, meant nothing more than public rivers, as contradistinguished from private ones ; and they took the ebb and flow of the tide.as the test, because it was a convenient one, and more easily determined the character of the river. Hence the established doctrine in England, that the admiralty jurisdiction is confined to the ebb and flow of the tide. In other words, it is confined to public navigable waters.

"At the time the Constitution of the United States was adopted, and our courts of admiralty went into operation, the definition which had been adopted in England was equally proper here. In the old thirteen states the far greater part of the navigable waters are tide-waters. And in the states which were at that period in any degree commercial, and where courts of admiralty were called on to exercise their jurisdiction, every public river was tide-water to the head of navigation. And, indeed, until the discovery of steamboats, there could be nothing like foreign commerce upon waters with an unchanging current resisting the upward passage. The courts of the United States, therefore, naturally adopted the English mode of defining a public river, and consequently the boundary of admiralty jurisdiction. It measured it by tide-water. And that definition having found its way into our courts, became, after a time, the familiar mode of describing a public river, and was repeated, as cases occurred, without particularly examining whether it was as universally applicable in this country as it was in England."

The court held the act of 1845 to be constitutional and valid. But two things should be observed in reference to

the act of 1845 and the above decision, and they are : First, the subjects of admiralty and maritime jurisdiction were not enlarged. The effect of such act was to extend to such courts the same jurisdiction over the lakes and waters connecting them, as was then possessed and exercised by the said courts in cases of the like steamboats and other vessels employed in navigation and commerce upon the high seas or tide-waters within the admiralty and maritime jurisdiction of the United States.   Second, that such jurisdiction was not held to be exclusively in the courts of the United States.   The result was, that this jurisdiction was exercised concurrently between the federal and state courts.   Mr. Justice MILLER, in delivering the opinion in the case of *The Hine* v. *Trevor,* *supra,* in speaking of the ruling in the case of *The Propeller Genesee Chief* v. *Fitzhugh, supra,* says: " That decision was made ten years ago, and the jurisdiction, thus fairly established, has been largely administered by all the district courts of the United States ever since, without question.

"At the same time, the state courts have been in the habit of adjudicating causes, which, in the nature of their subject-matter, are identical in every sense with causes which are acknowleged to be of admiralty and maritime cognizance; and they have in these causes administered remedies which differ in no essential respect from the remedies which have heretofore been considered peculiar to admiralty courts. This authority has been exercised under state statutes, and not under any claim of a general common law power in these courts to such a jurisdiction."

The conclusions reached in the above case are stated thus :

" It must be taken, therefore, as the settled law of this court, that wherever the district courts of the United States have original cognizance of admiralty causes, by virtue of the act of 1789, that cognizance is exclusive, and no other court, state or national, can exercise it, with the exception always of such concurrent remedy as is given by the common law.

Sinton *et al. v.* The Steamboat R. R. Roberts, *alias* New Era.

"This examination of the case, already decided by this court, establishes clearly the following propositions:

" 1. The admiralty jurisdiction, to which the power of the federal judiciary is by the constitution declared to extend, is not limited to tide-water, but covers the entire navigable waters of the United States.

" 2. The original jurisdiction in admiralty exercised by the district courts, by virtue of the act of 1789, is exclusive, not only of other federal courts, but of the state courts also.

"3. The jurisdiction of admiralty causes arising on the interior waters of the United States, other than the lakes and their connecting waters, is conferred by the act of September 24th, 1789.

" 4. The admiralty jurisdiction exercised by the same courts, on the lakes and the waters connecting those lakes, is governed by the act of February 26th, 1845."

It is plain and obvious that the foregoing decisions have not taken away from the state courts the power to enforce such remedies, in cases not cognizable in the admiralty courts, as have been provided by the state legislatures, and we have seen by the rulings in the cases hereinbefore cited, that the cause of action in the present case never has been cognizable in the admiralty courts. Prior to such decisions, the jurisdiction in cases conferred by the two acts of Congress had been exercised concurrently by the federal and state courts, but since such decisions the jurisdiction has been exercised exclusively by the admiralty courts to the exclusion of the other federal and state courts.

The cause of action which is the foundation of the present action, not being cognizable in the admiralty courts, and the remedy being provided by the legislature of this State, the court below possessed full and ample jurisdiction of the cause.

The third objection to the complaint is, that the averment of a demand is not sufficient; and the fourth is, that there is no specific averment that the claim is due. Both of these objections were considered when this case was here before,

and were decided adversely to the appellee.   We adhere to such ruling, and will not further consider such objections.

It is further urged that the complaint is defective, because it does not offer specifically to surrender the note. The objection is untenable.   This is a proceeding under the code of this State to enforce a lien given by the statute of this State, and all that is required is, that the note or a copy shall be filed with and made a part of the complaint.   The original must be produced on the trial, unless lost or some valid excuse be shown.   The note becomes a part of the files in the cause.   But if this were a proceeding in admiralty, no formal tender is necessary either in the pleadings or on the trial.   *Meyer* v. *Tupper*, 1 Black, 522 ; *Carter* v. *Townsend*, 1 Clifford, 1 ; *The Brig Nestor*, 1 Sumner, 73 ; *The Salem's Cargo*, 1 Sprague, 389 ; *Raymond* v. *The Schooner Ellen Stewart*, 5 McLean, 266 ; *Steamboat Charlotte* v. *Lumm*, 9 Mo. 64 ; *Merrick* v. *Avery*, 14 Arkansas, 370.

It is next contended that the lien of the plaintiff was lost by taking the note sued on.   We do not think so.   The statute gives a lien to secure the debt.   The note is not the debt, but is the mere evidence of the debt.   The giving of a note by the debtor does not waive a vendor's or mechanic's lien.   We can see no reason why it should in this case.   See the cases cited under the fifth objection.

It is also insisted that the lien was lost by the assignment of the note.   So much of section 655 as relates to the present case is as follows:

" Sec. 655.   All boats, vessels, and water crafts of every description, found in the waters of this State are liable: First. For all debts contracted by the master, owner, agent, clerk or consignee thereof, on account of supplies furnished for the use of the same, on account of work done or services rendered for the same,—by boatmen or mariners, or any other persons, or on account of work done or materials furnished in building, repairing, fitting out, furnishing or equipping such boat, vessel or water craft."

The note sued on is made assignable by our statute. See an act concerning promissory notes, etc., 2 G. & H. 658. The assignment of the note transfers the lien given by the statute, the same as the assignment of a note transfers the mortgage, or vendor's or mechanic's lien.

It is due to the profession of the State, that we should state that we express no opinion as to the constitutionality and validity of the second and third clauses of section 655. They are not involved in the present action. They are, however, very similar to the statute of California, which was held void in *The Moses Taylor, supra,* and to the statute of Iowa, that was held void in *The Hine* v. *Trevor, supra.* The above statutes were held void because they embraced matters that were cognizable only in the admiralty courts.

It is further claimed that the lien of the plaintiff has been lost by the lapse of time. It is averred in the complaint that the boat was built in 1860, at New Albany, Indiana, and that thereafter it has never been within the jurisdiction of the State until the fall of 1869, when this action was commenced, without delay, to assert the lien. As to the effect of the lapse of time, see *The Barque Chusan,* 2 Story, 455, and *The Prospect,* 3 Blatchford C. C. 526. In the last case, the court say:

"In order to make out a case that will have the effect to avoid a lien, from delay in enforcing it against a vessel, there must be something more than mere lapse of time—unless, indeed, the delay be such that the court, in analogy to the statute of limitations, would hold the debt to be barred—there must be unreasonable neglect and delay, operating to the prejudice of third persons, after opportunities have existed to enforce the lien."

There is nothing in the complaint to show unreasonable delay. If such facts exist, they should be affirmatively shown in an answer.

It is further suggested that, because the boat was permitted to leave the State, the lien was lost. There is nothing in the complaint showing any culpable negligence.

If such a defence could be made, it does not arise upon the complaint.

It is also contended that the action can not be maintained, because no notice of the lien was given as required by the registry laws of the United States. It is sufficient to say that this is not a proceeding in admiralty under the laws of Congress, but is a proceeding under our statute, which does not require any notice of the lien.

Finally, it is contended that Roberts, as master of the boat, possessed no power to execute the note sued on, and thereby create a lien on the boat. The lien was created by the original contract. The giving of the note did not waive or discharge the lien. The statute, upon which this proceeding is based, in express terms, provides for liabilities created by the master of the boat. The master executed the note for himself and other owners of the boat.

In our opinion, the court erred in sustaining the demurrer to the complaint.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to overrule the demurrer to the complaint, and for further proceedings in accordance with this opinion.