MICHAEL MURPHY *vs.* JOHN ADAMS and another, and logs.

HENRY F. PRESCOTT *vs.* same.

Somerset.    Opinion March 26, 1880.

*Laborer's lien on logs may be enforced by assignee.    Amendment.*

One who has purchased the claim of a laborer in the cutting and hauling of logs may maintain an action thereon in the name of such laborer to enforce the laborer's lien on the logs.

The fact that the laborer assigns his claim to a third party, who is willing to advance him money therefor, does not defeat or discharge his lien.

The object of the statute giving the lien is to make the pay of the laborer prompt and secure, and if the laborer can realize his pay more readily by making sale of his claim instead of waiting the slow process of the law, he is at liberty to do so, and the lien may be enforced by seasonable attachment, in the name of the laborer, for the benefit of the purchaser of the claim. Nor does it make any difference that the money when collected will be divided between two purchasers.

Where the writ as originally drawn required the officer to attach " certain logs marked Y P X L, Y P X K and Y P X O now lying," &c., and the officer attached " certain spruce logs . . . 69 in number, being 23 of each of the above named marks," the plaintiff asked leave and the presiding judge allowed him to amend, so as to make the description of the marks more certain, by twice inserting the words " and certain logs marked ;" *Held*, the amendment, if one was necessary, was clearly within the discretionary power given the court to amend circumstantial errors or defects, and it does not affect the plaintiff's right to judgment against the logs.

ON EXCEPTIONS AND REPORT.

The facts sufficiently appear in the opinion. The following are copies of the due bills and amendment referred to in the opinion.

(Due bills.)

"14.19.

Due Michael Murphy for labor done in the woods for us the

present winter, fourteen dollars and nineteen cents.   Payable in April next.

JOHN ADAMS & Co.

Jan. 15th, 1877."

"18.52.

Due Mike Murphy eighteen dollars and fifty-two cents; it being for labor done in the woods for us the past winter.   Payable the first of April next.

JOHN ADAMS & Co.

Kingfield, March 20th, 1877."

"$26.65.

Due H. F. Prescott, twenty-six dollars and sixty-five cents, it being for labor done in the woods for us the present winter. Payable April next.

JOHN ADAMS & Co.

Kingfield, Feb. 7, 1877."

Motion to amend. — "Somerset county.   Supreme Judicial Court.   September term, 1878.   H. Frank Prescott *vs.* John Adams *et al.* and certain logs.   And now on the first day of said term, the plff. moves to amend the writ in the action aforesaid, by inserting after the words 'also certain logs marked Y P X L,' the following words, viz : 'and certain logs marked,' and after the words Y P X K, and 'certain logs marked,' so that the writ amended, shall read as follows, viz : 'and also certain logs marked Y P X L, and certain logs marked Y P X K, and certain logs marked Y P X O,' and that the description of the marks upon the said different lots of logs in the body of said writ, wherever occurring, may be similarly amended.

STEWART & HOPKINS, Att'ys for Pl'ff."

The presiding judge allowed the amendment and W. E. L. Dillaway, claimant of the logs as assignee in bankruptcy of Moseley, Wheelwright & Co., the original owners, alleged exceptions.

By the report the full court are to draw inferences as a jury might, and enter such judgment as shall be in accordance with the legal rights of the parties.

*D. D. Stewart* and *J. I. Hopkins,* for the plaintiffs.

*Pillsbury & Potter,* for the claimant.

The lien given by statute is an inchoate, personal right. *Pearsons* v. *Tincker*, 36 Maine, 387; *Colley* v. *Doughty*, 62 Maine, 501; *Rollins* v. *Cross*, 45 N. Y. 766; *Ames* v. *Palmer*, 42 Maine, 197. And being but an inchoate, personal right, to be invoked or not at the pleasure of the person for whose benefit it is given, the right to invoke it cannot be assigned or transferred to another. *Pearsons* v. *Tincker, supra; Ames* v. *Palmer, supra; Daubigney* v. *Duval*, 6 Taunton, 604; *Caldwell* v. *Lawrence*, 10 Wis. 332; *Rollins* v. *Cross, supra; Fitzgerald* v. *First Presb. Church*, 1 Mich. (*Nisi Prius*,) 243; *Roberts* v. *Fowler*, 4 Abbot, Pr. (N. Y.) 263, and same case, J. E. D. Smith, 632; *Foster* v. *Westmoreland*, 52 Ala. 223; *Urquehart* v. *McIver et al.* 4 John. 102; *McCombe* v. *Davies*, 7 East. 5. The lien and the debt were inseparable while both existed, and when the plaintiff transferred the debt, fully and unconditionally, so that he had no remaining interest in it, the lien ceased to exist. In Iowa it has been decided, that, while taking a note does not extinguish the lien, the negotiation of the note is a waiver of the lien. *Scott* v. *Ward*, 4 Iowa, 112.

The legislature of Wisconsin passed an act in 1859, c. 113, allowing any number of persons having liens to assign to one of their own number, and that such assignee might have the benefit of the lien act. In this case it is proposed to go farther in that direction without an act of the legislature than they could in that State under that act, for here it is not one lienor assigning to another but to outsiders.

Statutory liens are to be strictly construed, and in order to secure the benefit of these, parties must bring themselves closely within their provisions. *Lord* v. *Woodard*, 42 Maine, 497; *Thompson* v. *Gilmore*, 50 Maine, 428; *Sheridan* v. *Ireland, and logs*, 61 Maine, 486; *Stuart* v. *Morrison, and logs*, 67 Maine, 549.

The amendment to the Prescott writ was improperly allowed; because its effect was to annul the statutory limits within which a lien of that nature should be enforced, and because the rights of third parties had intervened, (the creditors of Moseley, Wheelwright & Co.) and because it introduced a new cause of action.

R. S., c. 91, § 34; stat. 1876, c. 64; *Frost* v. *Illsley*, 54 Maine, 345; *Stuart* v. *Morrison, and logs, supra; Witte* v. *Meyer*, 11 Wis. 295; *Gault* v. *Wittman*, 34 Md. 35; Phillips, Mec. Liens, 427; *In re Dey*, 3 N. B. Reg. 81, S. C. Blatchford, C. C. 285; *Annis* v *Gilmore*, 47 Maine, 152; *Milliken* v. *Whitehouse*, 49 Maine, 527; *Cooper* v. *Waldron*, 50 Maine, 80; *Parkman* v. *Nutting*, 59 Maine, 398; *Farmer* v. *Portland*, 63 Maine, 46; *Bicknell* v. *Trickey*, 34 Maine, 273.

BARROWS, J.   The plaintiffs in these actions, being employed by the defendants for that purpose, respectively labored in the cutting and hauling of logs on Jerusalem township, in the winter of 1876–77; and when they quitted work, each received a due bill signed by the defendants, in legal effect a promissory note not negotiable, for the amount due him,—"it being for labor done in the woods for us the present winter, payable in April next." The defendants were operating on the township for Moseley, Wheelwright & Co., by whom they were employed to cut and haul logs by the thousand. The plaintiffs not being paid for their labor, these suits were commenced in June, 1877, and a lien upon the logs claimed therein, and the logs were seasonably attached. Moseley, Wheelwright & Co. procured receipters for the logs, and subsequently having gone into bankruptcy, their assignee now appears to claim the logs, and resist the rendition of any judgment to enforce the lien thereon, because, he says, the lien ceased to exist before the commencement of the suit, by reason of the fact that the plaintiffs respectively sold their claims to other parties, and ceased to have any interest in the enforcement of the lien. Prescott's claim is represented by one due bill which he appears to have sold about the time he came out of the woods, in February, to one Winter, a trader in the vicinity of the operation, to whom he subsequently gave a written assignment of the claim, having indorsed the due bill at the time of its sale and delivery.

Murphy worked at two different periods during the season, received two of the non negotiable due bills, and got one of them cashed by Winter, and the other by one Parker, merely placing his name on the back of the due bills when they were sold and

delivered. Now the claimant of the logs insists, that, by these proceedings, the lien (which he says is a mere personal right to be enforced by and for the benefit of the laborer only,) was destroyed, and that it cannot be made to inure to the benefit of those who have paid the laborers and become the purchasers of their claims.

The case shows that in the present instance a large number of the laborers' claims were thus taken at a small discount by Winter, presumably relying on the lien to secure payment; and the probable extent of the practice among laborers in lumbering operations, of realizing their dues at an early day in this mode, makes it desirable to have the point definitively settled.

The groundwork of the claimant's argument is in the position he takes that the laborer has ceased to have any interest in the collection of the sums due for his work, and that the lien, being but a personal right, to be enforced for his benefit only is destroyed when a third party has paid him for his claim.

In the present case, inasmuch as the laborers indorsed the non negotiable due bills which were given them in blank to the parties who advanced the money for them, the claimant's position cannot be maintained if it be true as laid down in the text books that "an indorsement in blank of a note not negotiable is an undertaking that it may be collected of the maker by using due diligence, which consists in demand on its becoming due; and in case of non payment, the maker being solvent, in immediate suit with attachment where it is allowed, followed by the most vigorous measures for collection." Bayley on Bills, 2d Am. ed. 152, citing *Prentiss* v. *Danielson*, 5 Conn. 175 ; *Huntington* v. *Harvey*, 4 Conn. 124. In *Seymour* v. *Van Slyck*, 8 Wend. 403, it was held that the indorser of a note not negotiable has no right in an action by his indorsee against him, to insist upon previous demand and notice "because his indorsement is equivalent to a guaranty." If these plaintiffs are liable as guarantors of the due bills, they have just as much interest in the enforcement of the lien as if they never had received the money on them from anybody.

But, aside from this, and independent of any guaranty by the laborer that the amount due him is collectible by the use of due

diligence, we cannot find either in principle or sound authority any good reason for holding that the transfer by the laborer to a third party of an equitable interest in the sum due him for his labor should work a forfeiture of his lien.   The object of the statute giving the lien is to make certain the payment for the labor which has gone to increase the value of the timber; (see *Spofford* v. *True*, 33 Maine, 284); and it would detract much from the benefit designed to be conferred to hold that the laborer must necessarily personally incur all the delay and expense that not unfrequently arise from the tedious litigation which follows an effort to enforce a lien of this sort, at the peril of losing it altogether.

If the lien can be enforced in his name by one who has assumed this risk and burden for him, another object of the statute, which is to make his pay prompt as well as secure, will be materially advanced.   Murphy testifies that he considered the bills good, only he "did not want to wait around there."

We think it would be laying an unnecessary burden upon the laborer for whose benefit the statute was designed, to say that he should not avail himself of the security which the statute gives him in the way most beneficial to himself, and if he can better himself by giving to an assignee the right to procceed in his name instead of "waiting around there" for the slow process of the law, we see no reason why he may not do it without forfeiting the lien from which he derives that advantage.

The claims of laborers secured by a statute lien, stand substantially in this respect upon the same footing as those of mechanics.

The weight of authority and reasoning is in favor of the assignability of the lien of a mechanic and the right of his assignee to assert his claim in the same manner and to the same extent that the mechanic could.   *Kerr* v. *Moore*, 54 Miss. 286, citing *Laege* v. *Bossieux*, 15 Gratt. (Va.) 83; *Tuttle* v. *Howe*, 14 Minn. 150; *Davis* v. *Bilsland*, 18 Wall. 659; and other cases of like purport and effect.  See also, *Hull of a new of ship*, Daveis, 199.   *The Sarah J. Weed*, 2 Lowell, 556.   Nor is there anything adverse to this doctrine in our decisions, cited in behalf of

the claimant of the logs. Assignability is one thing—negotiability another. In *Pearsons* v. *Tincker*, 36 Maine, 387, it was rightly held that a lien claim which had been assigned could not be enforced in the name of the assignee; but it does not touch the right of such assignee to enforce the lien in the name of his assignor. Whether chapter 235, laws of 1874, would operate a change in the rights of the assignee we need not now inquire.

The point decided in *Ames* v. *Palmer*, 42 Maine, 197, was simply that a trespasser could not interpose the lien of a third party as a common carrier upon the goods which were the subject of suit, in which lien he had no interest or concern as assignee or otherwise, to bar the action of the general owner against himself for a tortious interference, upon the ground that the plaintiff must show a present right of possession. The cases have no tendency to sustain the doctrine in support of which they are cited.

These are the suits of the laborers, prosecuted in their names by those to whom they gave authority to enforce their rights in the collection of the sums due them for their labor, when they received their money and made over their claims. It is of no importance to the owner of the logs, to whom the money now goes, if it discharges the laborer's lien. It must be paid once to the laborer, or the man who legally represents him, unless it is released or discharged. There is the same difference that there is between the discharge and the assignment of a mortgage. When an assignment has been made by the laborer of his interest, the courts will protect the interest of the assignee as they will that of the assignee of any other non-negotiable chose in action— let in all equitable defences which are open between the original parties to the contract, and give the plaintiff in interest the same remedy which the plaintiff of record may have. Nor does it make any difference that there are two plaintiffs in interest in the suit of Murphy. There is but one suit. Neither the debtors nor the log owners are subjected to any additional expense or trouble, nor can it concern them how the money, which it is their duty to pay, is disposed of, any more than it would whether the laborer paid two creditors or one with the proceeds of his work.

In Prescott's suit, as the writ originally stood, the officer was commanded to attach "certain logs marked Y P X L, Y P X K, and Y P X O, now lying in the boom in the Kennebec river, at Augusta . . . to enforce the plaintiff's lien as hereinafter set forth." And the officer returned an attachment of "a lot of spruce logs, marked Y P X L, Y P X O, Y P X K, and estimated at seventy-five dollars, being 69 sticks in number, and 23 sticks of each of the aforesaid marks."

Lest it should be said that the punctuation, though intelligible to the officer, as appears by his return, did not sufficiently designate the logs as bearing, not one mark of twelve letters three of them thrice repeated, but certain logs each bearing a mark of four letters varied as specified, plaintiff moved for leave to amend by twice inserting the words, "and certain logs marked" in the description of the property which was ordered to be attached. The claimant excepts to the allowance of this amendment and insists that it is not by law amendable, and at all events, if allowed, vacates the attachment so that no judgment should go against the logs. The claimant relies upon *Stuart* v. *Morrison and logs*, 67 Maine, 549, disregarding the radical difference that in that case four or five different lots of logs belonging to as many different owners were attached, when there was nothing whatever until you reached the parol testimony to indicate that it was other than one lot, each log of which bore all the marks mentioned; while in the present case the logs were substantially one lot, the product of one operation and all belonging to one firm, though the final letter of the marks was not the same on all of them. If there was room for a wrong interpretation, in view of the punctuation between the several marks mentioned, we think it was competent to exclude it by amendment. It comes fairly within the power given by the statute to amend circumstantial errors or defects when the person and case can be rightly understood. It is very clearly not an amendment introducing a new cause of action. The facts and case differ so widely from those in *Stuart* v. *Morrison*, that while it may be doubtful whether an amendment was needed, it was plainly within the power of the presiding judge to allow it and the exceptions to its allowance

must be overruled. Nor can it affect the right of the plaintiffs to judgment against the logs returned as attached. The proof shows that they were the logs on which the plaintiffs labored. The marks were put on after they were hauled to the landing place, and without reference to the time or locality of the cutting — some of those which received the mark last made use of being among the logs that were first cut, and *vice versa.* There was a faint attempt to show that Prescott's bill might have contained a charge of a few cents for something other than his personal labor. But the attempt fails. The witness says that these outside charges were about equal on either side. They seem to have been so adjusted by the parties ; for the due bill expressly declares that the sum therein mentioned is due for labor.

> *Judgment for the plaintiffs, respectively, for the amount of their due bills and interest from the time when they fell due against the personal defendants and against the logs attached.*

APPLETON, C. J., WALTON, DANFORTH, LIBBEY and SYMONDS, JJ., concurred.