The Midland Railway Company *v.* Wilcox *et al.*

Filed Feb. 5, 1890.

No. 13,686.

THE MIDLAND RAILWAY COMPANY *v.* WILCOX ET AL.

RAILROAD.—*Mechanic's Lien.—Fastens on Road as Entirety.—Act in Relation to.—Amendatory Act.*—Under the act of 1883, giving a lien to all persons who do work upon a railroad not in operation, or furnish materials for it, and the amendatory act of 1885 (Elliott's Supp., sections 1699 and 1704) a lien is given upon the railroad, in legal contemplation a unit, and not upon detached or fragmentary parts, as a bridge, embankment or excavation.

SAME.—*Amendatory Act.—Design of.*—The amendatory act was designed to clear away obscurities in the earlier act, and to change somewhat the mode of securing and enforcing the lien. It carries into effect the intention of the Legislature to give a valid and effective lien by making explicit what was implied, and by making clear what was obscure in the former act.

SAME.—*Assignability of Lien.*—Such a lien is assignable, and the assignee may enforce his lien under the statute.

SAME.—*Work Performed in two or More Counties.—Lien.—Extent of.—Where May be Enforced.*—The statute does not confine the right to a lien to one county in cases where the work extends into two or more counties. The

lien fastens upon an entire and continuous line of unfinished road, and may be enforced in any of the counties through which the road runs.

SAME.—*Constructed and Unconstructed Portion. — Situated in Same County.* —*Lien.*—Where a corporation having a line of railroad in operation to a town or city within a county, contracts for the construction of a part of the road leading from such town or city to a point beyond the county limits, the contractors may acquire a lien upon the part which they construct or aid in constructing, although a portion of it lies within the county in which a part of the road is completed and in operation.

SAME.—*Enforcement of Lien.—Notice Required.*—In enforcing the lien, one notice filed in each of the proper counties will cover the entire line where it is included in one contract, and where the work has been done upon it and the materials furnished for it as a continuous line.

SAME.—*Material-men.—Judgments in Favor of.—Company Entitled to Credit. Contractors.*—Where judgments are rendered in favor of material-men and laborers against a railroad company, contractors with notice of the pendency of the actions must appear and defend them or they will be bound by the judgment. The judgments so rendered constitute a payment to the contractors, and the company is entitled to credit for the amount of them.

From the Madison Circuit Court.

*H. Crawford, D. C. Chipman* and *M. A. Chipman,* for appellant.

*F. M. Trissal, G. Shirts* and *A. F. Shirts,* for appellees.

ELLIOTT, J.—Wilcox seeks by his complaint to foreclose a lien which he asserts he holds by the assignment of part of an estimate, certified to him by the appellant's engineer, against an unfinished railroad of which the appellant is the owner. Holleran and Ingerman filed a cross-complaint, asserting a lien, and claiming the right to enforce it as the assignees of the persons with whom the construction contract was entered into by the railroad company.

We do not deem it necessary to give a synopsis of the pleadings, for the reason that the special finding contains the material facts, and we can, without a repetition, determine all the material questions of law arising in the case upon the facts contained in the special finding.

The facts, as they appear in the special finding, may be

thus summarized :    On the 4th day of June, 1885, the Cleveland, Indiana and St. Louis Railroad Company was the owner of a line of railroad extending from the city of Anderson to the city of Lebanon ; that part of the road lying between Noblesville and Anderson was completed and in operation, but that part between Noblesville and Lebanon was not completed or in operation.    On the day named the company entered into a contract with Parker & Co. for the construction of its unfinished railroad ; before any work was done under this construction contract the Midland Railway Company became the successor of the Cleveland, Indianapolis and St. Louis company, and accepted the contract which the latter had made with Parker & Co.    Under the direction of the Midland company, and in accordance with the terms of the contract, the original contractors and their assignees performed labor and furnished materials to the Midland company, estimates were certified by its engineer for the principal part of the sum owing the contractors for the labor done and materials furnished.    The aggregate sum was evidenced by eleven estimates certified by the company's chief engineer. On the 15th day of July, 1885, Parker & Co., assigned twelve hundred dollars of the estimate for June, 1885, to the plaintiff, Wilcox, as collateral security for a loan of that amount. On the 15th day of August, 1885, Parker assigned his interest in the construction contract to his partners, Prisco and Fiorella, and they subsequently assigned to Holleran, Ingerman and Haverstick, but the latter afterwards assigned his interest to his associates, Holleran and Ingerman.    In the contract of assignment to Holleran, Ingerman and Haverstick, it was stipulated that they should have all the rights and claims of every description of the assignors.    On the 2d day of October, 1885, Holleran and Ingerman filed a notice of their intention to hold a lien on the railroad for work done and materials furnished under the construction contract, and stated therein the amount owing them, and stating, also, what was included in the estimates, and what had not been

estimated. This notice describes the entire line of uncompleted road and appurtenances, and recites the assignment to Wilcox of twelve hundred dollars of the June estimate. On the 23d day of November, a similar notice of an intention to hold a lien on the road and appurtenances was filed in the recorder's office of Hamilton county, and notice was also filed in Boone county, and it was recorded on the 28th day of that month. The labor and materials, included in the estimates and mentioned in the notices, was performed upon and were furnished for that part of the road between Noblesville and Lebanon, the part between Noblesville and Anderson having been completed and in operation at the date of the construction contract. The estimates prepared by the engineer do not divide the work so as to show what part of the materials were furnished for the separate parts of the road, nor do they show what part of the work was done in Hamilton county and what part in Boone, but in performing the work and furnishing the materials the contractors and the engineer treated the work as a continuous line extending from Noblesville to Lebanon, and as not separated by any divisions. The value of the work done upon the road and materials furnished therefor in the county of Hamilton as estimated by the engineer is $8,160.06, and the value of the work done upon and materials furnished for the road in Boone county is $3,400. The contractors have been paid at different times sums amounting in the aggregate to $4,132.49. The payments were made generally and without regard to the county in which the work was done. In addition to the payments referred to Holleran and Ingerman were paid $1,760 on the 15th day of February, 1886, on general account. Actions were brought by divers sub-contractors in which judgments were rendered, amounting in the aggregate to $1,088.17 principal, $141.70 attorney's fees, and costs $243.20, making a total of $1,473.07. Holleran and Ingerman were not parties to any of these actions, but they testified as witnesses in them. All of the judgments ex-

cept two, one in favor of Presser and Downing for $508.54, and one in favor of Reuben Grebler for $64.50 were paid by the company. The judgment in favor of Presser and Downing was for timber, and it was for $311.54 more than the value of timber furnished by them. The actions in which judgments were rendered were brought after the 5th day of November, 1886, and after the railway company had made default in payment. The assignors, Prisco and Fiorella, under the terms of their contract with their assignees, Holleran and Ingerman, are indebted to the latter in the sum of $4,358.56. The amount due Wilcox is $758.50.

In so far as the conclusions of law are material to the controversy waged in this court they are, in substance, these :

1st. The plaintiff has a lien for $798.50 upon that part of defendant's road in Hamilton county and west of Noblesville.

2d. The cross-complainants, Holleran and Ingerman, have a lien upon the road between Noblesville and Lebanon for $3,950.50.

The question which comes first in logical order, is whether the lien asserted under the construction contract exists and is enforceable. In 1883 a statute was enacted giving a lien to all persons who do work upon a railroad not in operation, or furnish materials for it, and in 1885 this statute was amended. Elliott's Supp., sections 1699 and 1704. There is, therefore, a statutory lien created by law, and the question is as to the extent and nature of the lien, and whether the plaintiff and the cross-complainants are within the law.

The act of 1883 was in force when the construction contract was made, for it was not supplanted by the act of 1885, since that act, although it was passed some months before the contract was entered into, did not take effect until July 18th, 1885, but we do not regard the later act as in any respect impairing the lien created by the earlier statute. The later law, so far from impairing the lien, really enlarged it, by making the provisions of the act of 1883 explicit and

clear. The amendatory act did not profess to sweep away any rights existing under the former act, nor to create an entirely new and different lien. What it professes to do, and what it does accomplish, is to clear away obscurities in the former act, and in some degree change the mode of securing and enforcing the lien. Both the acts are to be considered in arriving at the legislative intent, and we have no doubt, after having considered both of them, that it is our duty to adjudge that the Legislature intended by the first act to give a valid and an effective lien, and that the last act simply carries that intention into effect by making explicit what was before implied, and by making clear what was before obscure.

The true construction of the earlier act requires the conclusion that the Legislature meant to create a lien that should fully secure contractors, laborers and material-men. It is impossible to misconceive the object which the Legislature intended to accomplish, and the courts can not, without a wide departure from principle, defeat the legislative purpose by a narrow and rigid interpretation. The act is remedial in its nature, and is, therefore, to be liberally construed so as to extend and make effective the statute in the direction and to the extent designed by its authors. We are satisfied that the act of 1883 gave a lien upon the railroad, and not upon mere parcels of it, as an isolated bridge or culvert, or as a single embankment or excavation. A culvert, embankment or cut would, as every one knows, be utterly valueless, and it can not be held that the Legislature intended to give a lien upon things destitute of value. To so adjudge would be to affirm that the Legislature did an empty and an idle thing.

It must be assumed that the Legislature intended that the acts giving the lien should take their place in the great system of the law, and not form mere detached and fragmentary parts isolated from the other rules and statutes forming the system of law. Assuming this, the conclusion justly

The Midland Railway Company v. Wilcox et al.

results that the Legislature meant that other statutes, as well as the rules of the unwritten law, should be considered in giving effect to their acts, and that these rules should be so applied as to make the security which the acts relative to the lien professed to give contractors and laborers, valuable and effective. To make that security of value it must be held that the statutes give a lien upon the railroad, not upon detached or fragmentary parts, and this conclusion is required by the rule, hereafter more fully stated, that a railroad is to be regarded and treated as one entire thing. It is, in legal contemplation, a unit.

It has been held that statutes giving a lien affect only the remedy, and, if this be the true rule, then the act of 1885 gives a lien to all persons who do work and furnish materials no matter when the contract was made, for it is general and sweeping in its terms. _Gordon_ v. _South Fork, etc., Co._, 1 McAllister, 513. As the work was done and the materials were furnished after the act of June, 1885, took effect, then the contractors and sub-contractors may enforce a lien under that act if it be true that the act affects only the remedy.

It is not necessary, however, to decide whether the right to a lien is a substantive one within constitutional protection, or whether the statute creating it simply affects the remedy; for, whatever view be taken, the ultimate conclusion must be the same. Either the lien is a substantive right which can not be taken away by subsequent legislation, or the statute creating a lien simply affects the remedy. If the lien can not be taken away by subsequent legislation the contractors and sub-contractors have not been deprived of it; if the statute creating the lien affects only the remedy, then the contractors and sub-contractors may avail themselves of the remedy.

If the original contractors were here the claimants, we should have no doubt as to their right to enforce a lien under the statute, and the question is, can those to whom they have assigned their rights claim the benefit of the statutory

lien ?   The rights of the plaintiffs and of the cross-complainants are of a somewhat different character, and we shall consider them separately.

Wilcox, the plaintiff, was assigned part of an estimate issued to Parker & Co., the original contractors, and he claims directly through them.   The claim assigned to him had been definitely fixed and ascertained prior to the assignment, and the estimate was an acknowledgment that it was due his assignors.   If he acquired all the rights of his assignors he acquired the security which they held as an incident of their claim, so that the question is, could he, under the law, acquire their full rights ?   We know that there is an apparent conflict in the authorities upon the question of the assignability of a mechanic's lien ; but this conflict is caused principally by the fact that, at common law, choses in action were not assignable, although in equity it is otherwise.   The rule declared by the cases supported by the stronger reason is that such liens are assignable in equity.   *Major* v. *Collins*, 11 Bradw. (Ill.) 658 ; *Friedman* v. *Roderick*, 20 Bradw. (Ill.) 622 ; *Dixon* v. *Buell*, 21 Ill. 202 ; *Cairo, etc., R. R. Co.* v. *Fackney*, 78 Ill. 116 ; *Texas, etc., R. R. Co.* v. *McCaughey*, 62 Texas, 271 ; *Austin, etc., R. R. Co.* v. *Daniels*, 62 Texas, 70.   As our statute adopts, and, in truth, enlarges the equity rule, it must follow that such liens may be assigned.   This is the ruling of our court, and it is right.   *Sinton* v. *Steamboat, etc.*, 46 Ind. 476.

The conclusion we have declared is supported by many other courts in strongly reasoned opinions.   *Murphy* v. *Adams*, 71 Me. 113 ; *Tuttle* v. *Howe*, 14 Minn. 141 ; *Skyrme* v. *Occidental, etc., Co.*, 8 Nev. 219 ; *Iaege* v. *Bossieux*, 15 Gratt. 83 ; *Kerr* v. *Moore*, 54 Miss. 286 ; *Stryker* v. *Cassidy*, 76 N. Y. 50.   It is in close harmony with the general principle that a security is the incident of a debt and passes with the assignment of the debt to the assignee.   *Perry* v. *Roberts*, 30 Ind. 244 ; *Felton* v. *Smith*, 84 Ind. 485, and authorities cited, p. 495 ; *Reeves* v. *Hayes*, 95 Ind. 521 ; *Day* v. *Bowman*, 109

Ind. 383; *Connecticut Mutual, etc., Co.* v. *Talbott,* 113 Ind. 373. The doctrine which runs through all of our cases is that the debt is the substantive thing, the security the shadow, and that the two are inseparable. *Hough* v. *Osborne,* 7 Ind. 140; *Garrett* v. *Puckett,* 15 Ind. 485; *Hubbard* v. *Harrison,* 38 Ind. 323.

We can not regard the reasoning of some of the courts which hold that the right to a lien is a purely personal privilege as either valid or forcible. Statutes giving a lien always intend to give a security for a debt, and this they generally accomplish. If the debtor gets what he contracted for it can not, in justice, make any difference to him to whom he pays what he owes, nor to whom the security created by law is assigned. It is often of great importance to a contractor to be able to raise money to prosecute the work under contract, and, in order to do this, to assign a claim secured by a lien. The denial of the right to assign may often seriously cripple and hamper a contractor, and yet do no good to the debtor. If the one may be benefited without the slightest injury to the other, there is no conceivable reason why the law should not permit him to receive that benefit by assigning his claim and lien. Take, for illustration, a case where a railroad company fails to pay its contractors, and they must either raise money on their claim or suffer their property to be sacrificed, is it not bare justice to permit them to prevent loss and possible ruin by availing themselves of their lien by assigning it to a person from whom they can obtain money? The transfer can do their debtor no harm, but it may do them great good. It is a sacrifice of justice to a bald technical rule of the common law, little respected anywhere now, to deny the right to assign the debt and with it the security the law provides.

It may be that there are statutes which make the lien a mere personal right, incapable of assignment, but our statute does not. It does not restrict the lien to any class; on the contrary, it gives a lien to all persons who do work or fur-

nish materials. The clause descriptive of the persons who may be benefited by the statutory provisions is as sweeping as one well can be, for the words are, "All persons" who shall do work or furnish materials, and the courts can not, without a violation of plain and settled principles, adjudge that it means that the privilege shall be a personal one, limited solely to the laborers, mechanics and material-men.

We have no doubt that Wilcox acquired a right to the lien of his assignors.

The right of the cross-complainants stands on even firmer ground than does that of the plaintiff. They did work and furnished materials after the contract was assigned to them, and the railroad company recognized their right to do so, and also recognized their claim. It is quite clear, both upon principle and authority, that they have an enforceable lien. Even the courts which deny the general right to assign the lien recognize the right of the persons who do work and furnish materials under such circumstances to avail themselves of the lien created by statute. The lien follows the debt or contract out of which it arises. *McDonald* v. *Kelley*, 14 R. I. 335; *Pensacola R. R. Co.* v. *Schaffer*, 76 Ala. 233; *Davis* v. *Bilsland*, 18 Wall. 659; *Murphy* v. *Adams, supra.*

The doctrine of *Pearsons* v. *Tinckner*, 36 Maine, 384, was expressly repudiated in the later case of *Murphy* v. *Adams, supra.* The rule asserted in *Caldwell* v. *Lawrence*, 10 Wis. 273, is virtually conceded to be wrong in *Tewksbury* v. *Bronson*, 48 Wis. 581, but is adhered to upon the rule of *stare decisis.* But we need not further pursue this line, for, as shown in *Kerr* v. *Moore*, 54 Miss. 286, and in *Tuttle* v. *Howe*, 14 Minn. 145, the overwhelming weight of authority sustains the rule long since asserted by this court.

The cross-complainants had a lien upon the uncompleted part of the road upon which they did work, and for which they furnished materials. Neither by the contract nor by the acts done under it was there any severance of the line as to them, for, throughout the transactions between the par-

ties the line of road was treated as a continuous one, and the cross-complainants were not bound to proceed against the part in the different counties separately.

We do not understand the statute to confine the right to a lien to one county in cases where the work extends into two or more counties. The lien extends to the whole line of an uncompleted railroad, no matter how many counties it may traverse. The purpose of the statute is evident, and that purpose is to give laborers, contractors, and material-men a lien upon the railroad which their labor constructs, and for which their property is used. The Legislature, it is manifest, did not intend to confine the lien to a line of road within a single county, and we can not so construe the statute. The improper use of a single word can not be allowed to thwart the intention of the Legislature, as it is manifested by the entire legislation upon the subject. Here the only misuse of terms consists in employing the singular, "county," where, it is evident, the plural, " counties," should have been used. It is our duty to give effect to the intention of the Legislature, and this we do by adjudging that a lien fastens upon an entire and continuous line of unfinished road, and may be enforced in any one of the counties through which the road runs. The case is analogous to that of a mortgage embracing parcels of land lying in different counties, and in such cases it is well settled that suit to foreclose may be brought in any one of the counties. *Holmes* v. *Taylor*, 48 Ind. 169.

It is obvious that if any other construction should be given the statute its enforcement might often lead to injurious results. It would uselessly multiply suits, and it would divide a line of railroad so as to make it in some instances practically valueless. Reasoning upon an analogous question the Supreme Court of the United States said, in *Muller* v. *Dows*, 94 U. S. 444: "A part of a railroad may be of little value when its ownership is severed from the ownership of another part. And the franchise of the company is not capable of division." So, we may say here, the fran-

chise can not be divided into fragmentary parts without injury to the public, to the owners of the road, and to the creditors. The public which grants these franchises have some interest in their exercise, and it is not to be presumed that the Legislature meant to impair their interests. We have enforced this principle in analogous cases, and we enforce it here. *Indiana, etc., R. W. Co.* v. *Allen*, 113 Ind. 581; *Louisville, etc., R. W. Co.* v. *Boney*, 117 Ind. 501. It is always proper to look to consequences in construing statutes and to adopt that construction, wherever there is obscurity, which will lead to a just result and prevent wrong and confusion. *United States* v. *Kirby*, 7 Wall. 482; *Rodman* v. *Reynolds*, 114 Ind. 148. But in this instance we find clear justification for our conclusion in the object which we know the statute was intended to accomplish, and, indeed, in the context of the statutes themselves, and these considerations unite with that suggested to strengthen and fortify our judgment.

The statute of 1885 gives a lien upon a railroad not in operation, and in doing this makes explicit what was before clearly implied. This, of course, excludes parties from acquiring a lien upon that part of the road completed and in operation. In this instance, the railroad was completed from Anderson to Noblesville and no further, so that there was an uncompleted part extending from Noblesville to the line of Hamilton county, and on that part the lien fastened. Where a corporation having a line of railroad in operation to a town or city within a county, contracts for the construction of a part of the road leading from such town or city to a point beyond the county limits, the contractors may acquire a lien upon the part which they construct, or aid in constructing, although a portion of it lies within the county in which a part of the road is completed and in operation.

There is here no question of priority of liens, for here the original debtor is seeking to escape payment of the money due its contractors, and the only question is whether the contractors and their assignees have a lien which they can en-

force.   Whether the Legislature could enact a lien law that would displace a prior mortgage we need not, and do not, inquire, for with that question we have now no concern. When the contract was entered into the contractors undoubtedly had a lien under the act of 1883, and the right to a lien was not taken away by the act of 1885; for that act more clearly defined the lien, and somewhat changed the procedure. Moreover, the contract, executed while the act of 1883 was in force, was accepted by the appellant; and a large part of the work was done after the act of 1885 was passed, and much of it, indeed, was done after that act went into effect.   We are strongly inclined to the opinion that where the law gives a lien, and parties contract under that law, it is not competent for the Legislature to entirely take away the lien, although it may change the mode of procedure; we need not, however, here decide this question, since, as we have seen, there was no interregnum in which there was no lien, for the later law made more effective the lien, but did not create a new one.   It is not to be forgotten, that when the contract was entered into the act of 1883 was in force, and the act of 1885 had been enacted, although it did not take effect until after the contract was executed; so that it is impossible to avoid the conclusion that the contract was made and was performed while there was a law in force giving a lien. The contract was in great part performed after the act of 1885 went into effect, and it may well be held that the security and the remedy are such as that law provides, even though it should be conceded that the later law only made clear what was before obscure.

The notice of the intention to hold a lien is in substantial conformity to the statute, and, as against the original party, this is all that is required.   *Neeley* v. *Searight*, 113 Ind. 316; *Peck* v. *Hensley*, 21 Ind. 344.

Where, as here, a line of railroad, although it extends through two or more counties, is treated in the contract and in the performance of the work under the contract as a con-

tinuous line of road, the contractors are not required, as against the railroad company, however it may be as to mortgagees or judgment creditors, to divide the road into parts corresponding to the counties it traverses, and enforce the lien in each county separately. If a notice is filed in each county it will be sufficient, although it does not divide the road into parts. In other words, one notice filed in each of the proper counties will cover the entire line where it is included in one contract and where the work has been done upon it and the materials furnished for it as a continuous line. It is not, to repeat what has been said, two separate parcels of property, and the cases deciding what must be done where there are two distinct and separate parcels of property are wholly irrelevant to the point in dispute. It is held in well-reasoned cases that where there is a single contract to erect buildings upon several lots, " the entire job may be put down as a single item." *Doolittle* v. *Plenz,* 16 Neb. 153 ; *Manly* v. *Downing,* 15 Neb. 637 ; *Davis* v. *Hines,* 6 Ohio St. 473 ; *Thomas* v. *Huesman,* 10 Ohio St. 402. We think this principle rules here. The decision in *Hill* v. *Braden,* 54 Ind. 72, does not oppose this conclusion, for there the buildings and the lots were separate and distinct parcels of property, while here there is only one parcel of property and that is the continuous line of road from Noblesville to Lebanon.

The estimates, as many of the cases hold, severed and divided the indebtedness, and each might have been assigned, but in enforcing a lien it would be necessary to make all interested persons parties to the suit. In this instance, the plaintiff and cross-complainants were certainly entitled to payment of the sums evidenced by the estimates, and as the property was indivisible it was proper to marshal all claims and enforce them by one decree. The parties claiming under the estimates were neither bound to delay until the entire work was done, nor to sell the road in fragmentary parts,

for the debt was due in instalments and there was a right to enforce the lien which secured it as soon as there was a default in payment. *Indiana, etc., R. W. Co.* v. *Koons,* 105 Ind. 507. Under the ruling in the well and strongly-reasoned case referred to, it would not be proper to split the cause of action into parts, and it was, therefore, proper to bring suit for all that was owing under the contract, and to bring all the parties into court so that the entire controversy could be adjusted by one final decree.

As the appellant is the original debtor, it can make no difference to it whether the trial court was right or wrong in adjusting priorities, or in fixing the time when the lien accrued. If the cross-complainants are content with the provision of the decree giving Wilcox priority, it can not be cause for complaint by the debtor.

The judgments rendered in favor of the material-men and laborers, and paid by the appellant, constituted a payment to the cross-complainants. They were notified, as the evidence shows, of the pendency of these actions, and it was their duty to have defended them. The rule in analogous cases is, that if one primarily liable is notified of the pendency of an action, and required to defend, he must do so or he will be bound by the judgment. *Chicago* v. *Robbins,* 2 Black, 418; *McNaughton* v. *City of Elkhart,* 85 Ind. 384; *Morgan* v. *Muldoon,* 82 Ind. 347. The judgments referred to conclusively adjudicated the claims of the parties, and the cross-complainants must credit the appellant with their aggregate amount, for they can not collaterally impeach these judgments.

We have considered all the material questions in the case in whatsoever form they arise, and our ultimate conclusion is that the judgment in favor of Wilcox should be affirmed, and that the judgment in favor of the cross-complainants should be reversed for the failure to allow the proper credit for the judgment rendered in favor of the laborers and material-men. It is, therefore, adjudged that the judgment as to the

cross-complainants, Holleran and Ingerman, be reversed, and the cause remanded, with instructions to restate findings upon the questions growing out of the judgments in favor of laborers and material-men, and the conclusions in reference thereto, and to deduct from the amount due the cross-complainants the aggregate amount of such judgments.

In all other respects than those indicated, the judgment is affirmed, and it is ordered that the costs of this appeal be taxed against the appellees, Holleran and Ingerman, except such costs as affect the appellee Wilcox, and, as to those costs, the judgment is, that they be taxed against the appellant.

